**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Rolando LOPEZ, Defendant–Appellant.**

**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Josefa FUENTES, Defendant–Appellant.**

Nos. 92–50137, 92–50145.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 6, 1994.

Decided Oct. 7, 1994.

Elaine Morinelli, Morinelli & Lieberman, Oakland, CA, for defendant-appellant Lopez.

Robin R. Scroggie, Los Angeles, CA, for defendant-appellant Fuentes.

Steven M. Arkow, Asst. U.S. Atty., Los Angeles, CA, for plaintiff-appellee.

Before: FARRIS, O'SCANNLAIN, and TROTT, Circuit Judges.

O'SCANNLAIN, Circuit Judge:

We must decide, among other issues, whether a substantive crime and a conspiracy to commit that crime are separate offenses for sentence enhancement purposes.

I

During September 1991, the Drug Enforcement Agency ("DEA") was conducting an investigation of appellants Fuentes and Lopez. Special Agent Jose Martinez arranged a meeting with them through informants Maria Arellano and Arturo Rodriguez. On September 30, 1991, Arellano called Fuentes to arrange a heroin deal.

On October 1, 1991, Agent Martinez purchased 25 grams of heroin from Fuentes for $3,200. Martinez told Fuentes he was interested in purchasing large quantities of heroin. Martinez testified that Fuentes told him that she had to check with her source, whom she implied was her husband, Lopez.

On October 15, 1991, Martinez called Fuentes to arrange another heroin purchase. The next day, Martinez tape-recorded a phone conversation in which Lopez told Arellano that he was prepared to sell ten ounces of heroin that day.

On October 16, 1991, Lopez and Fuentes met with Arellano and Rodriguez in a Burger King parking lot to transact the drug deal. After confirming that they had brought the heroin, Rodriguez signaled Martinez to arrest them. DEA Special Agent Christina DeBevoise participated in the arrest and searched Fuentes and their Ford Explorer. She found a .38 caliber super semi-automatic pistol in Fuentes' purse and the agents recovered 270 grams of heroin from the cab of the truck.

The agents then went to and searched the Lopez–Fuentes residence. In the master bedroom, agents recovered 1 gram of heroin from the top drawer in the dresser, as well as a loaded and cocked .38 caliber semi-automatic handgun. On top of the dresser there were several boxes of plastic baggies, a triple beam scale, and a silver metal spoon. A piece of jewelry in the shape of an AK–47 assault rifle was on top of the vanity and was later put into evidence.[1] Approximately $38,000 in cash was discovered in a purse hanging in the closet of the master bedroom. Agents also discovered a loaded AK–47 as-

---

1. This was apparently done to impeach Fuentes' testimony that she did not know what an AK–47 looked like.

sault rifle in the trash can in the front yard of the residence.

On October 29, 1991, Fuentes and Lopez were charged in a five-count indictment[2] with conspiracy to distribute 270 grams of heroin in violation of 21 U.S.C. § 846 (count one); distributing 25 grams of heroin in violation of 21 U.S.C. § 841(a)(1) (count two); possession with intent to distribute 270 grams of heroin in violation of 21 U.S.C. § 841(a)(1) (count three); using and carrying a super semi-automatic .38 caliber pistol on October 16, 1991 during and in relation to a drug trafficking crime—possession with intent to distribute—as charged in count three (count four); and using and carrying a super semi-automatic .38 caliber pistol and a loaded AK–47 rifle on October 16, 1991 during and in relation to a drug trafficking crime—conspiracy to possess heroin with intent to distribute—as charged in count one (count five).

In arguing an in limine motion at a pretrial hearing, the government stated that it would not introduce a photograph of Lopez with a firearm in his waistband in its case-in-chief. However, the government said that it intended to use the photograph for impeachment purposes and pursuant to Federal Rule of Evidence 404(b) if the defense claimed that Lopez did not have experience or familiarity with firearms. The district court ruled that the government could use the photograph "if somebody else takes the stand and tries to exculpate him in that respect." During the trial, the government introduced the photograph after Fuentes testified that she had not seen her husband with other guns.

A jury convicted Lopez and Fuentes on all counts after a three-day trial. Because two different firearms were mentioned in count five, the district court instructed the jury that, in order to convict, it had to agree which firearm was used in relation to drug trafficking. The jury specifically found that appellants had used both firearms—the .38 caliber pistol found in the dresser and the AK–47 found in the trash can—in relation to their conspiracy to distribute heroin.

The district court sentenced Lopez and Fuentes on the Title 21 narcotics offenses—

counts one, two (for Fuentes only), and three—to 63 months imprisonment, and on the Title 18 firearms offenses—counts four and five—to five years and twenty years. The court ordered the firearms sentences to run consecutively to each other and to the 63 months imposed for the narcotics offenses, for a total of thirty years. The court also ordered four years of supervised release, following incarceration.

Lopez and Fuentes raise a number of claims attacking their convictions and sentences. Because Fuentes testified that appellants sold heroin and possessed the drug trafficking paraphernalia, this appeal deals primarily with counts four and five, the firearms counts.

## II

■ Fuentes argues that the jury instructions on the firearms counts were inadequate because the jury could have convicted her on the basis of the mere presence of a firearm, which is impermissible. *See United States v. Phelps,* 877 F.2d 28, 30 (9th Cir.1989). "To convict under 18 U.S.C. § 924(c), the government must establish that the defendant committed a [drug trafficking] crime ... and that he knowingly used or carried a firearm while committing the crime." *United States v. Streit,* 962 F.2d 894, 899 (9th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 431, 121 L.Ed.2d 352 (1992). "The government also must prove that the defendant's possession of the firearm played at least an indirect role in the underlying offense." *Id.* In other words, the firearm must be used or carried in relation to the drug trafficking crime. 18 U.S.C. § 924(c); *United States v. Martinez,* 967 F.2d 1343, 1346 (9th Cir.1992).

■ Fuentes contends that "[t]he District Court did not instruct the jury that a relation between the firearm and the underlying offense was required." She is wrong. The district court instructed the jury that to "use or carry a firearm" meant "having a firearm available to *assist or aid* in the commission of the crime alleged in counts one and three [the drug trafficking counts] of the indict-

**2.** Only Fuentes was charged with count two.

ment" (emphasis added).[3] Further, the district court specifically instructed that, in order to convict, "there must be evidence that the firearm was available to provide protection to the defendant or intimidate others *in connection with* his or her involvement in drug trafficking" (emphasis added). This instruction is consistent with our precedent holding that the "in relation to" requirement can be satisfied even if the gun is never drawn or within reach, if it emboldens the defendant to act. *United States v. Torres–Medina,* 935 F.2d 1047, 1049–50 (9th Cir. 1991).

■ Fuentes requested a jury instruction that the jury could not convict unless it found that the firearms "facilitated or had a role in a narcotics trafficking offense." The district court's instructions to the jury were substantively the same. The appellant's preference for alternative language is not grounds for reversal when the district court's instructions covered the issue. *See United States v. Miller,* 688 F.2d 652, 662 (9th Cir.1982). Based on the instructions that were given, the jury could not have convicted based on the mere presence of a firearm.

### III

Appellants contend that there was insufficient evidence to support their convictions on counts four and five (the firearms counts). "When there are multiple § 924(c) charges, the indictment must tie each firearm charge to a separate offense." *United States v. Castaneda,* 9 F.3d 761, 765 (9th Cir.1993), *cert. denied,* — U.S. ——, 114 S.Ct. 1564, 128 L.Ed.2d 210 (1994). In this case, the government linked the .38 caliber super semi-automatic pistol in Fuentes' purse on October 16, 1991 to the possession with intent to distribute count. The government separately linked the loaded and cocked .38 caliber semi-automatic and the AK–47 discovered in the appellants' bedroom and trash can, respectively, to the conspiracy count. In other words, the firearm charged in count

four was linked to the possession with intent to distribute charged in count three. And the firearms charged in count five were linked to the conspiracy charged in count one. Therefore, each firearm was tied to a separate offense.

### A

■ With respect to count four, Fuentes contends that the pistol in her purse was not carried "in relation to" the heroin deal because she was on friendly relations with her buyer, informant Arellano. This argument is unpersuasive. First, the jury could have easily determined that Fuentes' self-serving testimony lacked credibility. *See United States v. Martinez,* 967 F.2d 1343, 1346 (9th Cir. 1992). Second, the firearm may have been present, not because appellants feared trouble from their buyer, but in case the police or other drug dealers interfered with the deal. Because Fuentes had a .38 caliber super semi-automatic pistol in her purse during a drug deal, a reasonable jury could conclude that she carried a firearm in relation to drug trafficking. *See Torres–Medina,* 935 F.2d at 1050 ("the defendant need not have drawn [her] weapon or fired rounds").

■ With respect to count five, Fuentes contends that the .38 caliber firearm was not in the top drawer of the dresser, as the government agents testified, but was on a high shelf of the closet. Her argument is irrelevant because, even if the firearm were on a shelf in the closet, a reasonable jury could determine that this firearm was used in relation to drug trafficking. In *Torres–Medina,* this court held that a paraplegic used a firearm in relation to drug trafficking even though both the drugs and firearm were kept in a narrow crawlspace and he was physically incapable of retrieving the gun himself. 935 F.2d at 1050. The facts are much stronger in this case. Indeed, the court in *Torres–Medina* said, "[i]f Torres–Medina were not handicapped and unable to access the narrow passage leading to the cavity, this would be

---

**3.** The district court also instructed that: "In determining whether a defendant used or carried a firearm, you may consider all of the factors that have been received in evidence including the nature of the underlying drug trafficking crime alleged, the proximity of the defendant to the firearm in question, the usefulness of the firearm to the crime alleged and the circumstances surrounding the presence of the firearm."

an easy case, since a gun stored below a house where drug dealing occurs certainly is 'available' in the sense just described." *Id.*

■ Fuentes also contends that a reasonable jury could not have found that the AK–47 discovered in the trash can in the front yard was used in relation to drug trafficking. She argues that she had never seen the firearm before and that anybody could have put the gun there. Her argument is unpersuasive. The jury clearly disbelieved Fuentes' testimony and concluded that the AK–47 was hers. Such credibility determinations are the province of the jury. *Martinez*, 967 F.2d at 1346. In addition, even without the AK–47, there is still sufficient evidence to convict Fuentes of count five based on the .38 caliber firearm alone, which she admits is hers and was kept in her house.

### B

Lopez contends that "[w]eapons miles away from the act of the drug trafficking itself could not be 'quickly available' to appellant Lopez." Lopez appears to be arguing that the .38 caliber pistol and AK–47 discovered at his house were not related to the possession with intent to distribute charge. Lopez misconstrues the jury's verdict and the government's argument. The firearms discovered at appellants' residence were not linked to the drug sale in the parking lot. The pistol in Fuentes' purse was the firearm used on that count. The firearms at his residence were linked only to the conspiracy count.

Lopez further argues that "even if the .38 caliber handgun in the home could have arguably been available to appellant Lopez, the AK–47 was not 'inextricably intertwined' with the underlying drug trafficking offense." Lopez proceeds to argue exclusively about the AK–47, but his argument is irrelevant because he concedes the .38 caliber pistol was "found near drugs and paraphernalia in the home." This is all that is necessary to convict Lopez on count five. Only one firearm needed to be linked to the conspiracy to engage in drug trafficking. Therefore, the .38 caliber firearm alone is sufficient evidence

for a jury to have convicted Lopez on count five.

### IV

■ Both Lopez and Fuentes contend that the district court erred in sentencing them on counts four and five (the firearms offenses) to five and twenty years imprisonment, to run consecutively to each other and to the five-year term of imprisonment imposed on counts one, two, and three. Section 924(c)(1) reads: "In the case of his second or subsequent conviction under this subsection, such person shall be sentenced to imprisonment for twenty years...." 18 U.S.C. § 924(c)(1). Lopez and Fuentes argue that there is not a "second or subsequent conviction" as required by 18 U.S.C. § 924(c)(1), but rather that there was one section 924(c) offense involving three weapons.

■ The argument that there were not two offenses is flawed because possession with intent to distribute and conspiracy are two separate offenses for section 924(c) purposes. The Fifth Circuit has explained that "[d]rug trafficking crimes separated by the measure of the double jeopardy clause can each support § 924(c) convictions." *United States v. Privette*, 947 F.2d 1259, 1262 (5th Cir.1991) (citing, inter alia, *United States v. Fontanilla*, 849 F.2d 1257 (9th Cir.1988)), *cert. denied,* —— U.S. ——, 112 S.Ct. 1279, 117 L.Ed.2d 505 (1992). It is now well established that "[a] substantive crime and a conspiracy to commit that crime are not the same offense for double jeopardy purposes." *United States v. Saccoccia*, 18 F.3d 795, 798 (9th Cir.1994) (citing *United States v. Felix,* —— U.S. ——, ——, 112 S.Ct. 1377, 1384, 118 L.Ed.2d 25 (1992)). Indeed, the Fifth Circuit in *Privette* specifically reasoned that a defendant's "conviction of conspiracy and his conviction of possession with intent to distribute could each support a separate § 924(c) conviction and sentence." *Privette*, 947 F.2d at 1262. We find the Fifth Circuit's conclusion persuasive and consistent with our own case law. We note also that, if there are two separate section 924(c) offenses, the sentences cannot run concurrently, but must be

consecutive. 18 U.S.C. § 924(c);[4] *Fontanilla*, 849 F.2d at 1258–59.

 Lopez and Fuentes also suggest that the second conviction referred to in section 924(c) must be obtained in a separate proceeding. We disagree. There is no requirement that the second conviction be obtained in a different proceeding than the first. *See Deal v. United States,* — U.S. —, —, 113 S.Ct. 1993, 1997, 124 L.Ed.2d 44 (1993). Indeed, this court has held that the same underlying chain of events tried in one criminal proceeding can supply the first and second convictions under section 924(c). *Fontanilla,* 849 F.2d at 1258–59.

 Lopez and Fuentes also argue that under the rule of lenity, the court should find that section 924(c) is ambiguous. "The mere possibility of articulating a narrow construction, however, does not by itself make the rule of lenity applicable." *Smith v. United States,* — U.S. —, —, 113 S.Ct. 2050, 2059, 124 L.Ed.2d 138 (1993). As long as each firearm is linked to a separate predicate offense, there are two separate convictions under section 924(c). *Privette,* 947 F.2d at 1262. The second one of these would clearly be a "second or subsequent conviction." Because the common usage of the word "second" in this case is consistent with the sentence imposed, the rule of lenity does not apply. *See Smith,* — U.S. at —, 113 S.Ct. at 2060.

## V

 Fuentes claims that her sentence of thirty years imprisonment constitutes cruel and unusual punishment. The Eighth Amendment "forbids only extreme sentences that are 'grossly disproportionate' to the crime." *United States v. Bland,* 961 F.2d 123, 129 (9th Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 170, 121 L.Ed.2d 117 (1992) (citations and internal quotations omitted).

Fuentes presents no case law to support her claim that her sentence is grossly dispro-

portionate. Furthermore, "as a general rule, '[i]t is for Congress to say what shall be a crime and how it shall be punished....' '[A] sentence which is within the limits set by a valid statute may not be overturned on appeal as cruel and unusual.' " *United States v. Klein,* 860 F.2d 1489, 1495 (9th Cir.1988) (citations omitted). The sentence in this case was mandated by section 924(c). Fuentes presents no argument for why we should depart from the general rule and hold that a congressionally-imposed sentence violates the Eighth Amendment.

Finally, this court has upheld the imposition of a twenty-year minimum sentence for drug trafficking when there is a prior drug-related conviction. *United States v. Kinsey,* 843 F.2d 383, 392–93 (9th Cir.), *cert. denied,* 488 U.S. 836, 109 S.Ct. 99, 102 L.Ed.2d 75 (1988). *See also United States v. Hamblin,* 911 F.2d 551, 555 (11th Cir.1990), *cert. denied,* 500 U.S. 943, 111 S.Ct. 2241, 114 L.Ed.2d 482 (1991). Therefore, the punishment in this case is not cruel and unusual.

## VI

Fuentes argues that the district court abused its discretion by limiting testimony on her reason for possessing firearms. This argument is clearly meritless. First, she testified over ten times that she kept firearms for protection and/or for a gun collection.

 Second, any error was harmless. This court holds that "error is harmless if it is more probable than not that the prejudice resulting from the error did not materially affect the verdict." *United States v. Lui,* 941 F.2d 844, 848 (9th Cir.1991) (citation omitted). This standard is clearly met with respect to both firearms counts. Count Four charged bringing a firearm to the sale of 270 grams of heroin. Fuentes' argument that she collected guns and had them to protect her children and business does not address why she brought a super semi-automatic handgun to the drug deal. Similarly, for

---

**4.** Section 924(c)(1) reads: "Notwithstanding any other provision of law, the court shall not place on probation or suspend the sentence of any person convicted of a violation of this subsection, nor shall the term of imprisonment imposed under *this subsection run concurrently with any other term of imprisonment including that imposed for the crime of violence or drug trafficking crime in which the firearm was used or carried.*" (emphasis added).

count five, testimony regarding Fuentes' purpose for possessing firearms is entirely irrelevant to the AK–47 because Fuentes steadfastly denied that she had ever seen the gun before.

## VII

■ Fuentes contends that the district court erred by admitting the jewelry in the shape of an AK–47 and the photograph of Lopez with a gun in his waistband.[5] She applies the wrong standard of review and does not make any argument for how the district court's ruling constitutes an abuse of discretion. Fuentes never fully addresses the government's argument that the evidence was properly admitted to impeach Fuentes; she merely asserts that the evidence was more prejudicial than probative, but does not suggest how this rises to the level of abuse of discretion.

Even if the district court abused its discretion, the admission of the jewelry and photograph would constitute harmless error. "[U]nless there is a reasonable possibility that the improperly admitted evidence contributed to the conviction, reversal is not required." *Lui*, 941 F.2d at 848 (quoting *Schneble v. Florida*, 405 U.S. 427, 432, 92 S.Ct. 1056, 1060, 31 L.Ed.2d 340 (1972)). Fuentes presents no argument for how the admission of this evidence contributed to her conviction. Clearly, it did not. Regarding count four, Fuentes admitted that she was selling heroin and that the gun found in her purse was hers. Regarding count five, Fuentes admitted that all of the drug trafficking paraphernalia obtained from her bedroom, as well as the gun found in the bedroom, belonged to the appellants. Her only argument was that the gun was not in the dresser, but in the closet. This is irrelevant because in either case, the gun was available for section 924(c) purposes. *See* Part III. Therefore, this argument does not warrant reversal.

## VIII

Fuentes argues that the district court erred by admitting the testimony of Agent DeBevoise that she noticed the weight of the gun in Fuentes' purse.

Fuentes contends that this testimony was not admissible under Federal Rule of Evidence 701 because "Agent DeBevoise made no mention of . . . how much her gun weighs in relation to the gun found in Ms. Fuentes' purse." Fuentes argues that without such a weight comparison, the testimony is not "helpful to a clear understanding of the witness' testimony," as required by Rule 701.[6]

This argument is clearly wrong. Agent DeBevoise testified: "I would say the majority of [weight in Fuentes' purse] was due to the gun because I carry my gun in my purse on a daily basis and I find that when I take my gun in and out of my purse that I know if it is there or not. It is pretty heavy. And *my gun is much smaller than the weapon she was carrying*" (emphasis added).

Fuentes presents no argument to suggest how the district court's ruling constituted a clear abuse of discretion. We find no abuse.

## IX

Finally, Lopez argues that he should be allowed a two-point adjustment for acceptance of responsibility. The district court found to the contrary. Its determination is not clearly erroneous.

All of Lopez' and Fuentes' arguments are without merit.

AFFIRMED.

---

5. Only Fuentes, not Lopez, argues that the admission of the picture of Lopez was an abuse of discretion.

6. Federal Rule of Evidence 701 requires that lay opinion testimony be "helpful to a clear understanding of the witness' testimony or the determination of a fact or issue."