61 F.3d 914
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Gary Lee ROBERSON, Defendant-Appellant.
 No. 94-30216.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 14, 1995.
Decided July 11, 1995.
 
 Before: WRIGHT, POOLE, and WIGGINS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 FACTS
 
 2
 On October 26, 1993, Gary Lee Roberson was arrested pursuant to a warrant in a house at 3505 5th Avenue North, Great Falls, Montana. The warrant identified Roberson's address as a bungalow behind the house, but the evidence at trial indicated that he spent a lot of time at the house with Susan Brown, who lived there. When the warrant was executed, Roberson and Brown were in the bedroom of the house.
 
 
 3
 As Roberson was being led out of the house by the arresting officers, he stated that he was diabetic and needed his insulin. Brown, accompanied by Officer Lockerby, went into the bedroom to retrieve the insulin, but she could not find it. She spoke with Roberson, who appeared to whisper directions to her. She went back into the bedroom and began rummaging around the night stand by the far side of the bed. While she was doing so, Lockerby noticed the butt of a holstered gun on the night stand next to the insulin. He and another officer unholstered the gun (an unloaded .22 caliber Ruger) and four baggies containing a white substance fell out. Lockerby testified that the substance smelled like methamphetamine and that "1 oz" was written on each baggy. Lockerby asked Brown whether the night stand was on Roberson's side of the bed, and she nodded in assent.
 
 
 4
 The officers subsequently obtained a search warrant for the house. Items seized from the bedroom included: nine empty bottles of Inositol; three quarter-ounce packages of methamphetamine, packaged in disposable baby bottle liners; a cut up baby bottle liner containing Inositol; other cut up baby bottle liners; and an Intratech 9mm semiautomatic pistol in a gun case. The officers also found tools belonging to Roberson and men's clothing, including Roberson's Cossacks Motorcycle Club vest.
 
 
 5
 Roberson was indicted on three counts: possession with intent to distribute methamphetamine, in violation of 21 U.S.C. Sec. 841(a)(1) (Count I); using or carrying a firearm in connection with a drug trafficking crime, in violation of 18 U.S.C. Sec. 924(c)(1) (Count II); and being a felon in possession of a firearm, in violation of 18 U.S.C. Sec. 922(g)(1) (Count III). A jury trial on March 3-4, 1994 resulted in convictions on all three counts.
 
 
 6
 The district court sentenced Roberson to a 120-month prison term on Count I and a 60-month consecutive term on Count II. The court sentenced Roberson to 120 months on Count III, to run concurrently with the other two sentences. Roberson timely appeals his conviction and sentence. We have jurisdiction pursuant to 28 U.S.C. Sec. 1291, and we affirm.
 
 DISCUSSION
 
 7
 I. EVIDENCE OF ROBERSON'S PRIOR DRUG CONVICTION
 
 
 8
 Over Roberson's objection, the district court admitted (1) a certified copy of Roberson's state felony conviction for drug possession, and (2) testimony by Officer Sofitch describing the factual circumstances underlying the conviction. We review admission of the evidence for an abuse of discretion. United States v. Houser, 929 F.2d 1369, 1373 (9th Cir. 1990).
 
 
 9
 A. Rule 403 Does Not Require the Government to Accept
 
 
 10
 Roberson's Offer to Stipulate to his Prior Conviction
 
 
 11
 A prior felony conviction is an essential element of Count III (felon in possession of a firearm). Roberson offered to stipulate that he had such a conviction, and he argues that in light of this offer, any other evidence of the conviction should have been excluded as unduly prejudicial under Fed. R. Evid. 403. This court has rejected Roberson's argument that Rule 403 requires the government to accept his stipulation because failure to do so is necessarily "unduly prejudicial." See United States v. Breitkreutz, 8 F.3d 688, 690-92 (9th Cir. 1993). Thus, admission of the certified copy of Roberson's prior felony conviction clearly was permissible for purposes of proving an element of Count III, notwithstanding Roberson's offer to stipulate to the conviction.
 
 
 12
 Sofitch's testimony describing the details of Roberson's prior conviction, however, is not admissible to prove the "felony" element of Count III. See United State v. Barker, 1 F.3d 957 (1993), amended, 20 F.3d 365, 366 n.3 (9th Cir. 1994). We nevertheless conclude that Sofitch's testimony is admissible on a different basis, as described below.
 
 
 13
 B. Evidence of the Prior Conviction is Admissible Under
 
 
 14
 Rule 404(b) to Prove Elements of Counts I and II
 
 
 15
 Sofitch testified that Roberson's prior conviction for felony drug possession resulted from a search in which Sofitch seized methamphetamine and a pistol of the same type as that found in the instant case. That testimony is admissible under Fed. R. Evid. 404(b) to show Roberson's knowledge and intent, if it meets the following requirements:
 
 
 16
 (1) it must prove a material element of the offense for which the defendant is now charged; (2) in certain cases, the prior conduct must be similar to the charged conduct; (3) proof of the prior conduct must be based upon sufficient evidence; and (4) the prior conduct must not be too remote in time.
 
 
 17
 United States v. Arambula-Ruiz, 987 F.2d 599, 602-03 (9th Cir. 1993). In addition, the probative value of the evidence must outweigh its prejudicial effect under Rule 403. Id.
 
 
 18
 Arambula-Ruiz's first requirement is satisfied because the evidence was properly offered to prove Roberson's "knowledge," which is a material element of both Counts I and II, see United States v. Martinez, 967 F.2d 1343, 1346 (9th Cir. 1992); United States v. Ocampo, 937 F.2d 485, 488 (9th Cir. 1991), and to prove his "intent," which is a material element of Count I, see United States v. Adrian, 978 F.2d 486, 492 (9th Cir. 1992); Houser, 929 F.2d at 1373.
 
 
 19
 The evidence of the prior conviction need not meet Arambula-Ruiz's second requirement, similarity between the prior and the instant offenses, if it is admitted to show knowledge. Arambula-Ruiz, 987 F.2d at 603. A "factual similarity" is required if the evidence is admitted to show intent. Id. The requisite similarity exists here: In both cases, Roberson allegedly possessed methamphetamine, packaged in quarter-ounce amounts, and an Intratech 9mm semiautomatic pistol.
 
 
 20
 Roberson concedes that Sofitch's testimony satisfies Arambula-Ruiz's third and fourth requirements. The lower court did not abuse its discretion by concluding that admission of the evidence did not violate Rule 404(b).
 
 
 21
 C. Evidence of the Prior Conviction was Admissible Under Rule 403
 
 
 22
 The lower court also did not abuse its discretion by finding that the details of Roberson's prior conviction were admissible under Rule 403.[1] The similarity between the prior and instant offenses increases the probative value of the prior conviction. See Adrian, 978 F.2d at 492-93. It also increases the possibility of unfair prejudice, but we conclude that the district court's two limiting instructions adequately reduced this danger. See Arambula-Ruiz, 987 F.2d at 604.
 
 II. JURY INSTRUCTIONS
 
 23
 A. Use of a Firearm "In Relation To" a Drug Offense
 
 
 24
 Count II required proof that "during and in relation to the commission of" a drug trafficking crime, as charged in the indictment, Roberson "knowingly used or carried" a firearm. See 18 U.S.C. Sec. 924(c). The district court refused Roberson's proposed instruction. Instead, the court first recited the elements of the offense and then gave instructions defining the terms "in relation to" and "uses or carries a firearm." During deliberations, the jury requested clarification of the terms "using and carrying a firearm" and "assist or aid." Over Roberson's objection, the district court answered by referring the jurors to his previously given instructions regarding the phrase "uses or carries a firearm," and by providing two examples of situations in which a defendant may be convicted of using or carrying a firearm in the commission of a drug trafficking crime.
 
 
 25
 Roberson contends that the district court's instructions did not require the jury to find a relation between the underlying drug offense and the firearms. Whether a jury instruction misstates elements of a statutory crime is reviewed de novo, United States v. Blinder, 10 F.3d 1468, 1477 (9th Cir. 1993), but the district court's formulation of jury instructions is reviewed for an abuse of discretion. United States v. Woodley, 9 F.3d 774, 780 (9th Cir. 1993). Although the district court did not use the precise instructions we have approved in prior cases, the instructions at issue did follow or approximate language approved in various prior cases. See, e.g., United States v. Lopez, 37 F.3d 565, 568-69 & n.3 (9th Cir. 1994) (approving definition of "using or carrying"), cert. denied, 115 S. Ct. 2246 (1995); United States v. Perez, 989 F.2d 1111, 1114-15 (9th Cir. 1993) (approving definition of "in relation to"). We hold that, taken together, the district court's instructions in this case were adequate.
 
 
 26
 B. "Mere Presence or Proximity" Instruction
 
 
 27
 Roberson requested an instruction, as to Count I, that "possession of methamphetamine" could not be proven by "mere proximity to the drug, presence on property where [the drug] is found, [or] association with a person or persons having control of [the drug.]" The court instead gave a standard "possession" instruction, defining actual, constructive, sole, and joint possession. Our standard for reviewing the district court's refusal to give a requested instruction is unsettled. See United States v. Frank, 956 F.3d 872, 879 (9th Cir. 1991) (noting that cases apply either de novo or abuse of discretion standard), cert. denied, 113 S. Ct. 363 (1992). Even under the de novo standard, we hold that the district court's refusal, on the facts of this case, was not error.
 
 
 28
 The lower court's instructions, considered as a whole, adequately conveyed to the jury that they could not convict Roberson of possession of methamphetamine based on his mere proximity, presence, or association. See United States v. Joetzki, 952 F.2d 1090, 1095 (9th Cir. 1991) (inquiry is whether jury instructions as a whole are misleading or inadequate to guide deliberations). Specifically, the jury was instructed that it could not convict Roberson of possessing methamphetamine unless he had "both the power and the intention" to exercise "dominion and control over" the drugs. There was evidence from which the jury could conclude that Roberson exercised at least joint dominion and control over the bedroom and the night stand in which the drugs were found. See United States v. Disla, 805 F.2d 1340, 1350 (9th Cir. 1986) (dominion and control over the place where narcotics are found amounts to control, and thus possession, of the illegal substance). For example, drugs were found in the bedroom where Roberson often slept and worked and in which Roberson had some clothes, tools, and insulin; some of the drugs were found in the night stand on Roberson's side of the bed and right next to his insulin; and the drugs were found when Brown was searching for the insulin after Roberson apparently told her where to find it.[2] In light of this evidence, a separate "mere presence or proximity" instruction was not required. See United States v. Medrano, 5 F.3d 1214, 1218-19 (9th Cir. 1993) (finding "mere presence" instruction unnecessary where "the government's case was based on more than 'mere presence"').
 
 
 29
 III. SUFFICIENCY OF THE EVIDENCE ON COUNTS I AND III
 
 
 30
 The evidence is sufficient to support Roberson's conviction if, viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979); United States v. Lennick, 18 F.3d 814, 819 (9th Cir.), cert. denied, 115 S. Ct. 162 (1994).
 
 
 31
 A. Count I (Possession of Drugs with Intent to Distribute)
 
 
 32
 There was sufficient evidence from which the jury could conclude that (1) Roberson had an "intent to distribute" the drugs found in the bedroom, and (2) Roberson "possessed" the drugs. See 21 U.S.C. 841(a)(1).
 
 
 33
 Evidence of Roberson's intent to distribute included testimony that (1) Inositol (nine empty bottles of which were found on Roberson's side of the bed) was a commonly used cutting agent for methamphetamine; (2) drug dealers but not drug users typically cut their drugs; (3) some of the drugs found in the bedroom had been cut with Inositol; (4) the cut methamphetamine was packaged in quarter-ounce amounts, which is a common street distribution amount; (5) the drugs were found with or near guns, which are often used by drug traffickers. See United States v. Tarazon, 989 F.2d 1045, 1053 (9th cir.) ("'[i]t may be reasonably inferred that an armed possessor of drugs has something more in mind than mere personal use"') (quotation omitted), cert. denied, 114 S. Ct. 155 (1993); Martinez, 967 F.2d at 1345 (intent to distribute may be inferred from the presence of packaging materials). Moreover, as noted in Section IV, infra, the evidence supports the inference that Roberson possessed 16 ounces of methamphetamine, which could be cut into 192 quarter-ounce packages of 26-percent pure methamphetamine. Possession of large amount of drugs is indicative of an intent to distribute. United States v. Innie, 7 F.3d 840, 844 (9th Cir. 1993), cert. denied, 114 S. Ct. 1567 (1994); Martinez, 967 F.2d at 1345-46.
 
 
 34
 The evidence, viewed in the light most favorable to the government, was also sufficient to establish that Roberson "possessed" the drugs. The government established Roberson's constructive possession by showing "a sufficient connection between the defendant and the [drugs] to support the inference that the defendant exercised dominion and control over" them. See United States v. Terry, 911 F.2d 272, 278 (9th Cir. 1990). There was evidence specifically connecting Roberson with the drugs. Roberson slept and worked in the specific room where the drugs were located. His insulin, some of his clothes, and his tools were found in the bedroom. Some of the drugs were found right next to his insulin in the night stand on his side of the bed. See United States v. Walker, 993 F.2d 196, 200 (9th Cir.) (constructive possession shown where defendant possessed keys to apartment and bedrooms where drugs were found and defendant's clothes and shoes, a receipt with his name, and a large sum of cash were found near the drugs in one bedroom), cert. denied, 114 S. Ct. 276 (1993); Martinez, 967 F.2d at 1345 (possession shown where defendant resided in the house where cocaine was found and his shorts with $2,000 cash were found in same room as the cocaine); Terry, 911 F.2d at 278 (constructive possession shown where weapon was found in closet of bedroom shared by defendant and his wife and defendant was the only person present when the weapon was found).
 
 
 35
 B. Count III (Felon in Possession of Firearms)
 
 
 36
 There was sufficient evidence for a jury to conclude that Roberson "knowingly possessed" the firearms found in the bedroom. One of the firearms was found on the night stand next to Roberson's insulin on his side of the bed. The other was found near the night stand, also on Roberson's side of the bed. The second gun was traced to Roy Parmaly, a good friend of Roberson's and a fellow officer of the Cossacks Motorcycle Club. For the reasons discussed more fully in Section III.A, supra, we hold that this evidence is sufficient for a jury to conclude that Roberson had constructive possession of the firearms.
 
 IV. TESTIMONY REGARDING THE AMOUNT OF DRUGS
 
 37
 Roberson asserts that DEA Agent Mountsier's testimony, extrapolating from the evidence found at the house the amount of methamphetamine originally present, should not have been admitted or considered at sentencing. We disagree.
 
 
 38
 A. Mountsier's Testimony was not Expert Testimony
 
 
 39
 Roberson characterizes Mountsier as an expert witness and argues that his testimony should have been excluded because the government did not comply with Fed. R. Crim. P. 16(a)(1)(E). That rule requires the government to provide, at the defendant's request, a summary of the expert's testimony prior to trial. Rule 16(a)(1)(E) is inapplicable, however, because Mountsier did not testify as an expert. His testimony is better described as a synthesis of certain pre-admitted evidence than as "scientific, technical, or other specialized knowledge." See Fed. R. Evid. 702; cf. United States v. Baker, 10 F.3d 1374, 1411-12 (9th Cir. 1993) (accountant's "simple arithmetical calculations [using figures derived from the evidence presented at trial] were not an appropriate subject for expert testimony under Rule 702"), cert. denied, 115 S. Ct. 330 (1994).
 
 
 40
 Mountsier examined the nine empty bottles of Inositol and the lab reports that indicated the purity of the methamphetamine found in the bedroom. Mountsier used the parties' stipulation that the one-ounce baggies contained 73 percent pure methamphetamine and the quarter-ounce packages contained 26 percent pure methamphetamine. He explained that based on that evidence, the dilution ratio was approximately 2 parts Inositol to 1 part methamphetamine, and therefore, with 32 ounces of Inositol (each bottle label indicated four ounces), a total of 16 ounces of methamphetamine could be cut into 26-percent pure quarter-ounce packages. Contrary to Roberson's assertion, Mountsier only explained the calculation; he did not testify that Roberson's possession of 16 ounces of drugs would be consistent with an intent to distribute.
 
 
 41
 B. Mountsier's Testimony was Admissible Under Fed. R. Evid.
 
 401, 602, and 704
 
 42
 Roberson argues that Mountsier's testimony lacked foundation and relevance, and was impermissibly speculative. He further states that Mountsier's testimony "effectively provided the conclusion" that Roberson had an intent to distribute drugs and thereby violated Fed. R. Evid. 704. The district court's evidentiary rulings are reviewed for an abuse of discretion. United States v. Blaylock, 20 F.3d 1458, 1462 (9th Cir. 1994).
 
 
 43
 Mountsier's calculations, based on pre-admitted evidence, were relevant under Fed. R. Evid. 401 because they had a "tendency to make the existence of [a] fact that is of consequence" to the case -- the amount of drugs possessed by Roberson[3] -- "more probable or less probable than it would be without the evidence." There was also a sufficient foundation for Mountsier's testimony because he had personally examined the exhibits and stipulated facts in making his calculations. See Fed. R. Evid. 602 (personal knowledge requirement). Finally, Rule 704 is inapplicable because, contrary to Roberson's characterization, Mountsier's testimony did not include an opinion on an ultimate issue in the case.
 
 
 44
 C. The District Court Permissibly Calculated Roberson's
 
 
 45
 Sentence Based on 16 Ounces of Methamphetamine
 
 
 46
 Roberson argues that the district court impermissibly used Mountsier's 16-ounce (453.6-gram) figure in sentencing. The court's determination of the amount of drugs relevant for sentencing purposes is reviewed for clear error. United States v. Egbuniwe, 969 F.2d 757, 763-64 (9th Cir. 1992).
 
 
 47
 "Where the amount [of drugs] seized does not reflect the scale of the offense, the Court shall approximate the quantity of the controlled substance." U.S.S.G. Sec. 2D1.1(a)(3) application note 12 (Nov. 1993). The district court in this case could logically infer from the evidence presented, (e.g., nine empty 4-ounce bottles of Inositol, lab reports on the purity of the drugs found, notations on the bags indicating the amount of drugs contained therein), that Roberson originally possessed 16 ounces of methamphetamine. Contrary to Roberson's characterization, this extrapolation is not impermissibly based on speculation or unreliable evidence. Cf. United States v. Williams, 989 F.2d 1061, 1074 (9th Cir. 1993).
 
 V. CALCULATION OF ROBERSON'S SENTENCE
 
 48
 Roberson argues that the district court improperly calculated his sentence because the court erroneously assumed 16 ounces (453.6 grams) of drugs, rather than the 1.56 grams "proven at trial." As explained above in Section IV.C, however, we hold that the district court permissibly determined that Roberson originally possessed 16 ounces.
 
 
 49
 Roberson also argues that the district court erroneously failed to exclude from the 16-ounce figure any amounts of methamphetamine that Roberson "possessed for mere personal use," rather than with an intent to distribute. See United States v. Kipp, 10 F.3d 1463 (9th Cir. 1993); United States v. Rodriguez-Sanchez, 23 F.3d 1488 (9th Cir. 1994).
 
 
 50
 The district court may not consider amounts possessed for personal use when calculating a sentence for possession with intent to distribute. Rodriguez-Sanchez, 23 F.3d at 1496; Kipp, 10 F.3d at 1465-66. In this case, Roberson's counsel expressly argued that Kipp required the court to deduct personal use amounts when calculating Roberson's sentence, and argued that the Roberson possessed the drugs for personal use. The government, in response, argued that the evidence clearly indicated an intent to distribute all 16 ounces, and did not indicate personal drug use. Prior to sentencing Roberson, the judge specifically noted that Roberson had been convicted of possession with intent to distribute. The judge then sentenced Roberson based on all 16 ounces.
 
 
 51
 Although an express statement by the lower court regarding personal-use amounts would have been preferable, we conclude that the district court implicitly determined that all 16 ounces were intended for distribution. That determination is not clearly erroneous. For example, there is extensive evidence of drug distribution as opposed to mere possession, and there is testimony by one of Brown's sons, David Notley, that he had never seen Roberson use methamphetamine.
 
 
 52
 Because the district court permissibly concluded that Roberson possessed 16 ounces of methamphetamine with an intent to distribute, the court properly applied the statutory minimum sentence on Count I, followed by the statutorily required sentence on Count II.[4] Accordingly, we affirm Roberson's sentence.
 
 CONCLUSION
 
 53
 For the foregoing reasons, Roberson's conviction and sentence are AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 Although the district judge did not explicitly balance probative value against unfair prejudice before admitting Sofitch's testimony, failure to do so does not render admission of the evidence improper, because "it is clear from the record that the [district] court implicitly made the necessary finding." See United States v. Ramirez-Jiminez, 967 F.2d 1321, 1326 (9th Cir. 1992). The transcript reflects the trial judge's belief that the evidence was probative of Roberson's intent and knowledge, and the judge's awareness that, although prejudicial, the evidence was not unfairly prejudicial unless it became cumulative or went beyond proof "of intent and whatnot." 3/3/94 Tr. at 45
 
 
 [2]
 Whether this evidence is sufficient to allow the jury to find that Roberson possessed the drugs is a separate question, considered in Section III, infra
 
 
 [3]
 Although amount is not an element of the offense, it may be circumstantial evidence of an intent to distribute. See Martinez, 967 F.2d at 1345-46
 
 
 [4]
 Roberson concedes that if the court correctly applied the statutorily required sentences, then his argument for a departure under U.S.S.G. Sec. 5K2.13 must fail