62 F.3d 1418
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Michael DeAngelo GREEN, Defendant-Appellant.
 No. 94-6215.
 United States Court of Appeals, Sixth Circuit.
 July 27, 1995.
 
 Before: MARTIN and SILER, Circuit Judges; JOINER, District Judge.*
 PER CURIAM.
 
 
 1
 Defendant Michael DeAngelo Green appeals his conviction and sentence for conspiracy to commit carjacking, use of a firearm during a crime of violence, carjacking, use of a firearm in connection with carjacking, attempted carjacking resulting in murder, and use of a firearm in connection with attempted carjacking. Numerous issues have been raised. Based on the following discussion, we affirm.
 
 I.
 
 2
 This case involves Green's conviction for a number of armed carjacking incidents, including an attempted carjacking resulting in murder. The criminal activity occurred during random sprees between July 6-11, 1993, in Chattanooga, Tennessee.
 
 
 3
 Green was indicted for conspiracy to commit armed carjacking over a period of six days (count 1); carrying a firearm while committing an act of violence (count 2); armed carjacking (count 3); carrying a firearm in connection with carjacking (count 4); attempting to commit an armed carjacking resulting in the murder of Jeff Wolfe (count 5); and carrying a firearm in connection with attempted carjacking (count 6). After a jury trial, he was found guilty on all counts. On September 12, 1994, the court sentenced Green to life imprisonment, plus a total of 25 years on two mandatory consecutive 18 U.S.C. Sec. 924(c) counts, supervised release and restitution.[1]
 
 II.
 
 4
 Green contends that the evidence was insufficient under count 5 to prove that he intended to carjack Wolfe's vehicle.
 
 
 5
 Evidence is sufficient to support a conviction if "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). Circumstantial evidence will support a conviction, Tilley v. McMackin, 989 F.2d 222, 225 (6th Cir. 1993), and such evidence need not remove every reasonable hypothesis except that of guilt. Neal v. Morris, 972 F.2d 675, 677-78 (6th Cir. 1992).
 
 
 6
 The jury heard evidence from which they could have found the essential elements of the crime beyond a reasonable doubt. Thaddeaus Daniels, a juvenile co-conspirator, recounted to the jury the details of the July 6 and July 10 crime sprees. On count 5, Daniels testified that Green and Charles Watkins, a co-defendant, approached Wolfe's convertible on July 6 with their guns drawn and ordered Wolfe and his wife, Channon Wolfe, out of the car. Furthermore, he stated that Green's gun went off and shot Jeffrey Wolfe through the head. Daniels's testimony was corroborated by Channon Wolfe. Mrs. Wolfe testified that Green and Walker's actions and comments, including their demand to "get out of the car," indicated to her that their intent was to steal the car.
 
 
 7
 Apart from Wolfe's testimony, the conduct of Green and the participants indicated that they intended to steal the car. For example, in the other two instances where they robbed people in automobiles on July 6, they did not order the occupants to leave their cars. As the government notes, it would have been logical to conclude that Green and Walker intended to steal the car because "the car was a convertible and it would have been safer [and less apparent] ... to take money or other valuables from the Wolfes while they were seated in the car and in no position to resist ...."
 
 
 8
 Additionally, Green's fingerprints were found on the driver's door of one of the cars stolen and used in committing the crimes on July 6. The evidence against Green for the July 10 crimes also provided circumstantial evidence against Green for the July 6 crimes, including count 5. The crimes on July 6 and July 10 were strikingly similar, including the fact that both sprees began with the theft of a large General Motors automobile from a residence. Green essentially conceded that he was part of the crimes on July 10. Officer Yates arrested Green following a high speed chase on July 10, and identified him as the driver of the stolen station wagon on that night. A ski mask fitting a description given by some of the victims was found in the vicinity where Green was arrested. Victims described the driver of the stolen car on July 10 in a manner consistent with Green's physical characteristics.
 
 
 9
 Based on the foregoing, we conclude that the evidence was sufficient to support Green's conviction for attempted carjacking.
 
 III.
 
 10
 Next, Green argues that the district court abused its discretion in allowing Channon Wolfe to testify that she perceived that Green and Watkins intended to steal the car.
 
 
 11
 Admission of lay witness opinion testimony is committed to the sound discretion of the trial court. United States v. Taplin, 954 F.2d 1256, 1258 (6th Cir. 1992). Reversible error exists only where the court abused its discretion, and the failure to reverse would be "inconsistent with substantial justice." Zamlen v. City of Cleveland, 906 F.2d 209, 216 (6th Cir. 1990) (citation omitted), cert. denied, 499 U.S. 936 (1991).
 
 
 12
 Opinion testimony of a lay witness is not inadmissible simply because it embraces an ultimate issue of fact. United States v. Sheffey, --- F.3d ---, 1995 WL 383190, * 6 (6th Cir. June 29, 1995); United States v. Rea, 958 F.2d 1206, 1214 (2d Cir. 1992); see Fed.R.Evid. 701, 704. Rule 701 provides that a lay witness may testify in the form of opinions or inferences only if those opinions or inferences are "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue."
 
 
 13
 Channon Wolfe testified that she felt that Green and Watkins intended to steal the Miata:
 
 
 14
 From what, the way I felt at that point I felt they wanted our car. They wanted us out of the car and they wanted our car. I was thinking, you know, we'll give them our stuff, we'll give them anything they want. It's like they didn't want anything else. They wanted us out of the car.
 
 
 15
 Ms. Wolfe's perception had a rational basis and was helpful, and, thus, the court did not abuse its discretion. Moreover, any error on this point would have been harmless based upon the evidence set forth in the previous section. Fed.R.Crim.P. 52(a). Torres v. County of Oakland, 758 F.2d 147, 151 (6th Cir. 1985) (admission of testimony containing legal conclusion was harmless error). "A defendant has a right to a fair trial, but not necessarily to a perfect one." Rea, 958 F.2d at 1219 (citations omitted).
 
 IV.
 
 16
 Green contends that the district court erred in refusing to strike certain overt acts alleged in the conspiracy count of the indictment. Specifically, he argues that overt acts 1-4, 6, 9, and 10-13 were irrelevant and prejudicial.
 
 
 17
 "The striking of language from an indictment as being surplusage addresses itself to the sound discretion of the district court." United States v. Kemper, 503 F.2d 327, 329 (6th Cir. 1974) (citation omitted), cert. denied, 419 U.S. 1124 (1975). We review only for an abuse of that discretion. Id. A motion to strike surplusage should only be granted where it is clear that the language is irrelevant and prejudicial. United States v. Moss, 9 F.3d 543, 550 (6th Cir. 1993); United States v. Figueroa, 900 F.2d 1211, 1218 (8th Cir.), cert. denied, 496 U.S. 942 (1990).
 
 
 18
 The overt acts in question deal with incidents involving the acquisition of guns, theft of the two large General Motors cars used in carrying out the crime sprees, and the assault and robbery of various individuals on July 6 and July 10. Green has failed to show that these acts were irrelevant or prejudicial. These allegations demonstrate agreement, intent to rob at gunpoint, and a general course of conduct. As this court stated in Moss, 9 F.3d at 550:
 
 
 19
 "[I]f the language in the indictment is information which the government hopes to properly prove at trial, it cannot be considered surplusage no matter how prejudicial it may be (provided, of course, it is legally relevant)." United States v. Thomas, 875 F.2d 559, 562 n.2 (6th Cir.), cert. denied, 493 U.S. 867 (1989). Here, the information in question was proven by the government at trial and was legally relevant. Thus, the district court did not abuse its discretion ....
 
 
 20
 The overt acts at issue were either clear steps in furtherance of the conspiracy or evidentiary matters which the government intended to prove at trial or both. Accordingly, the district court did not abuse its discretion in refusing to strike these acts.
 
 V.
 
 21
 Green also argues that the district court erred in not holding that: (a) the federal carjacking statute, 18 U.S.C. Sec. 2119, violates the Commerce Clause, and (b) prosecution for both armed carjacking and carrying a firearm in connection with a crime of violence violates the Double Jeopardy Clause. This court has previously resolved both of these issues contrary to defendant's position. United States v. Johnson, 22 F.3d 106, 108-09 (6th Cir. 1994). One panel of this court may not overturn the decision of another panel. United States v. Edge, 989 F.2d 871, 876 (6th Cir. 1993). Accordingly, we have no reason to address these arguments.[2]
 
 VI.
 
 22
 Next, Green asserts that the court erred in not dismissing the three weapons counts under 18 U.S.C. Sec. 924(c) as duplicative. He argues that the underlying charges were part of one continuing offense, and, hence, the court should have imposed only one consecutive sentence for a total of five years.
 
 
 23
 Count 2 was based on the conspiracy to commit armed carjacking over a six-day period (count 1). Count 4 was based on the carjacking of the Chevy Cavalier convertible (count 3). Count 6 was based on the attempted carjacking of the Wolfe's Mazda Miata (count 5). The district court sentenced Green to five years on count 2 to run consecutively, five years on count 4 to run concurrently with count 2, and twenty years on count 6 to run consecutively.
 
 
 24
 First, a conspiracy to commit a crime of violence qualifies as a predicate crime for purposes of Sec. 924(c). See United States v. Harper, 33 F.3d 1143, 1149 n.5 (9th Cir. 1994), (conspiracy to rob is a crime of violence), cert. denied, 115 S. Ct. 917 (1995); United States v. Patino, 962 F.2d 263, 267 (2d Cir.) (conspiracy to kidnap is a crime of violence), cert. denied, 113 S. Ct. 354 (1992). Additionally, a conspiracy and a substantive crime may be separate predicate offenses in circumstances such as the instant case. See, e.g., United States v. Privette, 947 F.2d 1259, 1262 (9th Cir. 1991) ("conviction of conspiracy and conviction of possession with intent to distribute could each support a separate Sec. 924(c) conviction and sentence"). Green, thus, was properly subject to consecutive sentences for separate crimes of violence. Deal v. United States, 113 S. Ct. 1993 (1993); United States v. Henry, 878 F.2d 937, 942-43 (6th Cir. 1989).[3]
 
 VII.
 
 25
 Finally, Green argues that the district court abused its discretion in denying his motion to transfer venue due to pre-trial publicity. A motion for change of venue is committed to the sound discretion of the district court. United States v. Washington, 48 F.3d 73, 78 (2d Cir.), cert. denied, 1995 U.S. LEXIS 4225 (1995). "A juror's exposure to news accounts about the crime charged, standing alone, does not presumptively establish that the defendant was denied a fair trial." United States v. Chambers, 944 F.2d 1253, 1262 (6th Cir. 1991) (citation omitted), cert. denied, 502 U.S. 1112 (1992). The test is whether the jurors had formed fixed opinions about defendant's guilt or innocence. Irvin v. Dowd, 366 U.S. 717, 722-23 (1961); Kelly v. Withrow, 25 F.3d 363, 368 (6th Cir.), cert. denied, 115 S. Ct. 674 (1994).
 
 
 26
 We have no reason to conclude that the district court abused its discretion. The court conducted individual voir dire to determine if the jurors had fixed opinions about Green's guilt or innocence. All of the jurors responded that they had not formed any opinion. Washington, 48 F.3d at 78 (similar voir dire was sufficient in drug case where pretrial publicity included drug arrests, state court murder conviction of one of defendants, and effects of victim's death on community); Chambers, 944 F.2d at 1262; Kordenbrock v. Scroggy, 919 F.2d 1091, 1102 (6th Cir. 1990) (upholding refusal to change venue where, in four out of five counties, over 80% of people polled had heard about case, and in three out of five counties almost 50% of people thought that defendant was guilty), cert. denied, 499 U.S. 970 (1991). Some of the jurors in the instant case had never even heard Green's name, and were unaware that anyone had been arrested for the crimes. Finally, Green "has failed to demonstrate any actual prejudice flowing from [the] publicity." Kelly, 25 F.3d at 368. As the Supreme Court has stated:
 
 
 27
 In these days of swift, widespread and diverse methods of communication, an important case can be expected to arouse the interest of the public in the vicinity, and scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case .... To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.
 
 
 28
 Irvin, 366 U.S. at 722-23 (citations omitted); see also Kelly, 25 F.3d at 368. The court did not abuse its discretion in denying Green's motion for a change of venue.
 
 
 29
 AFFIRMED.
 
 
 
 *
 The Honorable Charles W. Joiner, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 The sentence breaks down in the following manner: five years on count 1; fifteen years on count 3, concurrent with count 1; life sentence on count 5, concurrent with counts 1 and 3; five years on count 2, consecutive to counts 1, 3, and 5; five years on count 4, concurrent to count 2; and twenty years on count 6, consecutive to the other counts
 
 
 [2]
 Additionally, United States v. Lopez, 115 S. Ct. 1624 (1995), does not affect our decision in Johnson. See United States v. Oliver, F.3d , 1995 WL 394368 (9th Cir. July 6, 1995) (explaining substantial differences between carjacking statute and the gun-free school zone statute in Lopez); see also, United States v. Wilks, F.3d , 1995 WL 395172 (10th Cir. July 6, 1995) (finding that machinegun statute, 18 U.S.C. Sec. 922(0), "represents Congressional regulation of an item bound up with interstate attributes and thus differs in substantial respect from legislation concerning possession of a firearm within a purely local school zone")
 
 
 [3]
 A question also exists whether the court was permitted to run the sentence on count 4 concurrently. See United States v. Lopez, 37 F.3d 565, 570 (9th Cir. 1994) (citation omitted), cert. denied, 1995 U.S. LEXIS 3655 (May 30, 1995). The government, however, does not raise this question on appeal