**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Paula ANDREWS, Defendant–Appellant.**

**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Ivan ANDREWS, Defendant–Appellant.**

**Nos. 94–10250, 94–10251.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 17, 1995.

Decided Feb. 2, 1996.

Ronald C. Rachow, Assistant United States Attorney, Reno, Nevada, for plaintiff-appellee.

John C. Lambrose, Las Vegas, Nevada; Fred Hill Atcheson, Reno, Nevada, for defendants-appellants.

Before: GOODWIN, CANBY and T.G. NELSON, Circuit Judges.

CANBY, Circuit Judge:

Ivan Andrews and his sister Paula Andrews appeal their convictions for murder, attempted voluntary manslaughter, and using a firearm in relation to a violent crime, in violation of 18 U.S.C. §§ 1111, 1113, and 924(c)(1). Ivan maintains that there is insufficient evidence to support his convictions for aiding and abetting Paula in the crimes in which she was the principal. Paula contends that she received ineffective assistance of counsel. Both argue that the court improperly applied 18 U.S.C. § 924(c) by treating their underlying substantive convictions as separate predicate offenses. We have juris-

diction under 28 U.S.C. § 1291. We reverse Ivan's aiding and abetting convictions and the related section 924(c) convictions. We affirm Paula's convictions and sentences.

## BACKGROUND

Early in the morning of August 22, 1993, Ivan shot and killed Stephen Lowery ("Lowery") at close range with a shotgun. Seconds later, Ivan's sister, Paula, fired into the car that had been driven by Lowery. Three people were inside the car; one was killed and two were injured.[1]

The events leading to this tragedy began even earlier that morning when Paula, along with Stephanie Collins, Will Bushyhead, and Matt John and James Thomas (two of the victims), went to buy beer and then drove toward a lake. On the way to the lake, the group stopped their truck when they came across a Geo automobile occupied by Lowery, Steve Williams, and Waylon Johns.

Once out of their vehicles, Collins and Waylon Johns began arguing. Lowery intervened and allegedly pushed Collins to the ground. Paula tried to help Collins, but Lowery would not let her pass. Paula then struck Lowery, and Lowery punched Paula in the jaw. The others stood by during the scuffle.

After the conflict, Paula, Collins and Bushyhead jumped in Collins' truck and drove away, leaving Matt John and James Thomas behind. With Collins driving, the three of them headed to Paula's house to wake up her brother, Ivan, and tell him about the incident.

When Ivan heard that Paula and Collins had been in a fight with Lowery, he became angry and grabbed a rifle. Paula and Ivan's father tried to talk the others out of returning to the scene of the altercation, but failed. Paula then asked her father for guns, which he provided both to Paula and Ivan. Meanwhile, Collins and Bushyhead went across the street to Collins' house to get crowbars.

The four of them (Ivan, Paula, Collins, and Bushyhead) got back into Collins' truck and returned to the area of the altercation to "get" Lowery and "trash" the car. Collins drove, Ivan rode in the passenger's seat, and Paula and Bushyhead rode in the back of the truck. Before long, they reencountered the Geo. Both vehicles faced each other and came to a complete stop. With the headlights on, Ivan stepped out of the truck carrying a shotgun, while Collins, Paula, and Bushyhead remained in the truck. Lowery stepped out of the driver's side of the Geo with his hands partially raised. Ivan approached Lowery and shot him. At that point, Waylon Johns jumped out of the Geo and ran. Paula, having stepped out of the truck, then approached the car and—despite seeing something moving in the back of the car that she later admitted was obviously a person—began firing into it. Inside the Geo were James Thomas, Matt John, and Steven Williams. Steven Williams was killed, and Matt John and James Thomas (both of whom were with Paula earlier that morning) were injured.[2]

After the shootings, the group of four drove to Paula's and Ivan's house. Paula hid the shotguns near the house under some brush. Sometime later, F.B.I. agents arrived. Paula and Ivan waived their rights, and admitted to participating in the shootings.

A jury found Ivan guilty of second degree murder of Lowery (Count One), aiding and abetting in the second degree murder of Steven Williams (Count Two), aiding and abetting in the attempted voluntary manslaughter of the two injured individuals in the Geo (Counts Three and Four), and using a firearm in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1) for each of the previous four predicate offenses (Counts Nine through Twelve). The jury found Paula guilty of second degree murder for killing Steven Williams (Count Two), aiding and abetting in the second degree murder of

---

1. All of the crimes occurred in "Indian Country," 18 U.S.C. § 1151, and Paula and Ivan are "Indians," thereby giving the district court jurisdiction. 18 U.S.C. § 1153.

2. James Thomas and Matt John were both friends of Ivan and Paula. Matt John is also their cousin.

Lowery (Count One), attempted voluntary manslaughter of the injured individuals in the Geo (Counts Three and Four), and using a firearm in relation to a crime of violence for each of the previous four predicate offenses (Counts Five through Eight).

Ivan challenges all but his murder conviction (Count One) on the ground that there was insufficient evidence to support the conclusion that he aided and abetted in the other crimes. Paula argues that she suffered from ineffective assistance of counsel. Both challenge the application of section 924(c) to all of their acts because they occurred so close together in time.

## ANALYSIS

### I. IVAN'S AIDING AND ABETTING CONVICTIONS

■ Ivan argues that the evidence is insufficient to support his convictions for aiding and abetting Paula in the murder of Williams and the attempted voluntary manslaughter of Matt John and James Thomas. We review the sufficiency of the evidence to determine whether, after "viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Atkinson,* 990 F.2d 501, 502 (9th Cir.1993) (*en banc*) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)).[3]

■ In order for Ivan to be guilty of aiding and abetting Paula in the murder of Williams and the attempted voluntary manslaughter of Matt John and James Thomas, the evidence must have established: (1) that Ivan specifically intended to facilitate the commission of Paula's crimes, (2) that Ivan "had the requisite intent" for those crimes, (3) that Ivan "assisted or participated" in the crimes, and (4) that Paula committed the crimes. *United States v. Gaskins,* 849 F.2d 454, 459 (9th Cir.1988). Thus, Ivan must

have "knowingly and intentionally aided and abetted" Paula in each essential element of the crimes. *United States v. Dinkane,* 17 F.3d 1192, 1196 (9th Cir.1994).

Unlike the typical aiding and abetting case, this case offers no evidence that Ivan knowingly and intentionally aided, counselled, commanded, induced, or procured Paula to shoot the people in the car. *Cf.* Wayne R. LaFave & Austin W. Scott, Jr., *Substantive Criminal Law* § 6.7, at 139 (1986) (discussing the "easier" class of cases "in which the liability of the accomplice is based upon the fact that he actually did 'aid,' 'abet,' or 'assist' in the commission of the crime") [hereinafter LaFave & Scott]. Ivan did not give Paula the shotgun, drive her to the scene, encourage her to shoot, or in any other obvious way assist her in shooting the victims in the car. It is thus difficult to see how Ivan could have had the requisite intent. *Cf. id.* § 6.7, at 138 ("one does not [generally] become an accomplice by refusing to intervene in the commission of a crime ... [and so] courts have experienced considerable difficulty in cases where the defendant was present at the time of the crime and the circumstances of his presence suggest that he might be there pursuant to a prior agreement to give aid if needed").

■ The government insists, however, that the circumstantial evidence sufficiently supports the jury's inference that Ivan had the requisite intent. While mere presence at the scene is insufficient to support a conviction of aiding and abetting, *United States v. Weaver,* 594 F.2d 1272, 1275 (9th Cir.1979), the jury can infer intent from circumstantial evidence. *United States v. Vaccaro,* 816 F.2d 443, 455 (9th Cir.), *cert. denied sub nom. Alvis v. United States,* 484 U.S. 914, 108 S.Ct. 262, 98 L.Ed.2d 220 *and cert. denied,* 484 U.S. 928, 108 S.Ct. 295, 98 L.Ed.2d 255 (1987). We have been unable, however, to find in the record circumstantial evidence of the requisite intent on Ivan's part. The evidence shows that Ivan, along with Collins and Bushyhead, accompanied Paula to the

---

**3.** The government contends that Ivan failed to renew his motion for a judgment of acquittal at the close of evidence. Although Ivan's attorney admits that he could not find this objection in the transcript, the clerk's record indicates that Ivan

did move to acquit after the government rested and at the close of evidence. We thus do not apply the plain error standard. In any event, we are not convinced that a difference in the standard of review would dictate a different outcome.

scene of the crime. There is no evidence that Ivan shared Paula's intent to hurt anyone other than Lowery. The testimony as to what was discussed among Ivan and the others shows that any agreement or understanding between Paula and Ivan involved only "getting" Lowery and "trashing" his car.

■ Neither are we convinced that a rational jury could infer Ivan's intent under the "natural and probable consequences" doctrine. The jury may infer that Ivan intended the natural and probable consequences of his actions. *See United States v. McInnis,* 976 F.2d 1226, 1234 (9th Cir.1992). Paula's actions, however, went beyond that scope. Paula did not shoot the victims in the car in the course of getting Lowery; she acted impulsively and on her own. Her actions were thus akin to those of a robber who, as part of an agreed scheme to steal a safe, robs the watchman in the building on his own. *See* LaFave & Scott § 6.8, at 158 (asserting that those stealing the safe are not accomplices to the robbery of the watchman under the natural and probable consequences doctrine). Allowing the jury to infer that Paula's actions here were the natural and probable consequence of Ivan's knowing actions would take the natural and probable consequences doctrine to an extreme, "inconsistent with more fundamental principles of our system of criminal law." *Id.* (noting that viewing the "natural and probable consequence" doctrine in broad terms "would permit liability to be predicated upon negligence even when the crime involved requires a different state of mind. Such is not possible as to one who has personally committed a crime, and should likewise not be the case as to those who have given aid or counsel."); *see also* Joshua Dressler, *Understanding Criminal Law* § 30.05, at 426 (1987) (remarking that in the context of aiding and abetting, "[t]he natural-and-probable-consequences doctrine has been subjected to substantial criticism").[4]

■ In light of the testimony at trial, no properly instructed rational jury could conclude that Ivan "participate[d] in [Paula's shootings] as something that he wishe[d] to bring about," or sought "by his action[s] to make ... succeed." *United States v. Vasquez–Chan,* 978 F.2d 546, 552 (9th Cir.1992) (citation omitted). While "[c]ircumstantial evidence can be used to prove any fact, ... mere suspicion or speculation" will not provide sufficient evidence. *Dinkane,* 17 F.3d at 1196 (internal quotations omitted). We conclude that Ivan's mere accompaniment, agreement to "get" Lowery, and presence during the shootings provide insufficient evidence for his aiding and abetting convictions.

Our conclusion is bolstered by our recent decision in *Dinkane.* In that case the evidence showed that the defendant, Dinkane, was seen "casing" a bank. *Id.* at 1194. About fifteen minutes later, Dinkane pulled his car up in front of the bank and three men got out of it. *Id.* The three men entered the bank, pulled out their guns, and robbed the bank. *Id.* Dinkane was charged with armed bank robbery on an aiding and abetting theory. *Id.* at 1195. We noted that although Dinkane was observed prior to the robbery, and although Dinkane knew guns had been used after the robbery, there was no testimony that could support an inference that Dinkane knew of the weapons before the robbery. *Id.* at 1198. We concluded that "[t]he evidence therefore did not establish Dinkane's knowing and intentional participation in an essential element of armed bank robbery...." *Id.*

Here, there is no evidence—other than mere speculation—that Ivan knew that his sister was going to shoot the occupants in the vehicle.[5] Paula fired into the vehicle because she was enraged. But the undirected rage that led Paula to fire into the car was hers alone. Ivan's aiding and abetting convictions must, therefore, be reversed because of insufficient evidence. *See also United States v. Pena,* 983 F.2d 71, 72–73 (6th Cir.1993)

---

4. The jury could reasonably conclude that Paula's shooting at the car was a natural and probable consequence of their agreement to "trash" the car. But this reasoning does not support an inference that Ivan had the requisite intent to commit murder.

5. We find no merit in the government's contention that Ivan's role, if any, in disposing of the shotguns after the shootings is sufficient to sustain the aiding and abetting convictions, which require a shared intent to shoot Paula's victims. *See Dinkane,* 17 F.3d at 1196.

(fact that defendant accompanied driver on car trip, was promised a plane ticket, and knew there was something illegal in car insufficient to sustain conviction for aiding and abetting possession of cocaine with intent to distribute); *State ex rel. Juvenile Dep't of Multnomah County v. Holloway,* 102 Or. App. 553, 795 P.2d 589, 591–92 (1990) (evidence showing that defendant accompanied gang members on drive-by shooting insufficient to support conviction for aiding and abetting in the shooting).

## II. PAULA'S INEFFECTIVE ASSISTANCE COUNSEL CLAIM

■ Ordinarily, we will not consider an ineffective assistance of counsel claim on direct appeal, because of the need "to develop a record as to what counsel did, why it was done, and what, if any, prejudice resulted." *United States v. Rewald,* 889 F.2d 836, 859 (9th Cir.1989) (citation omitted), *amen'd by* 902 F.2d 18 (9th Cir.), *cert. denied,* 498 U.S. 819, 111 S.Ct. 64, 112 L.Ed.2d 39 (1990). Although there are exceptions to this general rule, they are not applicable here. *See id.* On the record before us, we cannot determine whether the assistance provided by Paula's attorney was ineffective. We thus decline to reach Paula's ineffective assistance of counsel claim.[6]

## III. THE SECTION 924(c) CONVICTIONS

Paula and Ivan were charged with using a firearm during and in relation to a crime under 18 U.S.C. § 924(c)(1) for each of their substantive offenses. Section 924(c)(1) provides in relevant part:

> Whoever, during and in relation to any crime of violence ... uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence ..., be sentenced to imprisonment for five years.... In the case of his second or subsequent conviction under this subsec-

tion, such person shall be sentenced to imprisonment for twenty years....

18 U.S.C. § 924(c)(1). The district court sentenced Paula to five years for her first section 924(c) conviction (Count Five), and twenty years for each of her other three section 924(c) convictions (Counts Six through Eight), because they were "second or subsequent" convictions. Ivan was likewise sentenced to five years for his first section 924(c) conviction (Count Nine), and twenty years for each of his other three section 924(c) convictions (Counts Ten through Twelve).

■ Paula contends that she can be convicted of no more than one Section 924(c) conviction because each Section 924(c) violation must "be based on a separate predicate offense." *United States v. Smith,* 924 F.2d 889, 894 (9th Cir.1991).[7] According to Paula, because her underlying predicate acts (the murders and attempted voluntary manslaughter offenses) were combined under the Sentencing Guidelines, and occurred at virtually the same time, her underlying convictions can only be considered one predicate act. Alternatively, she suggests that she can be sentenced to only five years, rather than twenty, for each section 924(c) conviction after the first.

■ We review *de novo* the district court's interpretation of section 924(c). *United States v. Neal,* 976 F.2d 601, 602 (9th Cir.1992). Although there is much force to Paula's arguments, the district court's interpretation of section 924(c) is mandated by *United States v. Fontanilla,* 849 F.2d 1257 (9th Cir.1988), *Deal v. United States,* 508 U.S. 129, 113 S.Ct. 1993, 124 L.Ed.2d 44 (1993), and *United States v. Lopez,* 37 F.3d 565 (9th Cir.1994), *cert. granted and judgment vacated on other grounds by* —— U.S. ——, 116 S.Ct. 663, 133 L.Ed.2d 514 (1995) *and sub nom. by Fuentes v. United States,*

---

**6.** We urge the district court, upon proper application, to give serious consideration to the appointment of counsel for Paula to pursue collaterally her ineffective assistance of counsel claim.

**7.** Ivan joins in all of these section 924(c) arguments, but they no longer apply to his case

because we are reversing his aiding and abetting convictions. We also necessarily reverse the section 924(c) convictions relating to the aiding and abetting convictions. Ivan is thus left with only one section 924(c) conviction.

—— U.S. ——, 116 S.Ct. 663, 133 L.Ed.2d 514 (1995). In *Fontanilla*, we held that crimes occurring as part of the same underlying occurrence may constitute separate predicate offenses if properly charged as separate crimes. 849 F.2d at 1258–89. Paula's crimes were properly charged as separate offenses. Thus each of her four 924(c) convictions is properly based on a separate predicate offense. *Cf. Lopez*, 37 F.3d at 570 (substantive crime and conspiracy to commit that crime are not same offense for double jeopardy purposes and thus may each support a separate 924(c) conviction).

■ The remaining issue—whether three of the section 924(c) convictions must be treated as "subsequent convictions" for purposes of section 924(c)—is answered by *Deal* and *Lopez*. In *Deal*, the Supreme Court held that under section 924(c) "conviction" means "the finding of guilt by a judge or jury that necessarily precedes the entry of a final judgment of conviction," and more than one such "conviction" can occur in a single proceeding. 508 U.S. at 131–32, 113 S.Ct. at 1996. Under this definition of "conviction," all but one of Paula's 924(c) convictions are "subsequent convictions." *See also Neal* 976 F.2d at 602–03 (holding that multiple 924(c) convictions arising from the same indictment *require* the enhanced penalties for repeat offenses because "the meaning of 'second or subsequent conviction' is plain in the context of [section 924(c) ]") (emphasis added).

Paula argues that *Deal* is factually distinguishable, because in *Deal* the underlying predicate offenses occurred over a long period of time. Here the underlying predicate offenses occurred virtually simultaneously. Paula argues that imposition of the enhanced penalty designed for repeat offenders makes no sense in a case like hers, where there was no time for her to reflect and understand the consequences of enhanced penalties for the "subsequent" offenses. *See United States v. Johnson*, 25 F.3d 1335, 1337–38 (6th Cir. 1994) (*en banc*).

Although there is much force to Paula's policy argument, it does not permit us to avoid the import of the Supreme Court's unambiguous definition of "second or subsequent conviction" in *Deal*. The fact that "section 924 sentences can produce anomalous results and will provide no additional deterrence ... cannot defeat the plain language of the statute." *Fontanilla*, 849 F.2d at 1258. Indeed, we were presented with a situation comparable to Paula's in *Lopez*, where the defendants were convicted of using different guns on the same date in connection with the same drug trafficking activity. 37 F.3d at 568. One section 924(c) charge was related to an offense of possession of drugs with intent to distribute, and the second section 924(c) charge was related to conspiracy to commit the same substantive offense. We upheld twenty-year sentences for the second section 924(c) convictions. *Id.* at 570–71. We conclude that *Deal* and *Lopez* require us to reject Paula's challenge to the repeat-offender section 924(c) sentences.

■ Paula and Ivan next contend that their 924(c) convictions violate the double jeopardy clause. This argument is wholly without merit. Their section 924(c) convictions do not violate the Double Jeopardy Clause because each of the convictions required proof of an additional fact not required by the other. *See United States v. Mathews*, 36 F.3d 821, 823 (9th Cir.1994). Finally, we reject their contention that their sentence is "cruel and unusual." *Cf. Eckert v. Tansy*, 936 F.2d 444, 447–450 (9th Cir. 1991) (holding that imposition of two consecutive life sentences, one of them for using a weapon to commit a kidnapping, not cruel and unusual); *Lopez*, 37 F.3d at 571. We do, after all, have two dead and two wounded as a result of Paula's and Ivan's escapade.

## CONCLUSION

Ivan's aiding and abetting convictions, and the section 924(c) convictions dependent upon them, are reversed. Ivan's conviction for the murder of Lowery, and the section 924(c) conviction relating to it, are affirmed. Ivan's case is remanded for resentencing.

Paula's convictions and sentence are affirmed. We decline to reach Paula's ineffective assistance of counsel claim.

**No. 92–10250 AFFIRMED.**

No. 92–10251 AFFIRMED IN PART AND REVERSED IN PART; REMANDED FOR RESENTENCING.