**UNITED STATES of America**

**v.**

**Jose CASIANO.**

**Criminal No. 95–408–1.**

United States District Court,
E.D. Pennsylvania.

April 5, 1996.

Wendy Kelly, Asst. U.S. Atty., U.S. Attorney's Office, Philadelphia, PA, for Plaintiff.

Barnaby C. Wittels, Stephen Robert La Cheen and Assoc., Philadelphia, PA, for Defendant.

## MEMORANDUM OF DECISION

ANITA B. BRODY, District Judge.

This memorandum is written pursuant to Local Appellate Rule 3.1, which provides that, within fifteen (15) days of the filing of an appeal, a judge of this court may file a written opinion or a written amplification of a prior oral ruling. I write to amplify several points in my rulings from the bench during the sentencing of the defendant, Jose Casiano.

The primary issue in this appeal is the interpretation of a statute, 18 U.S.C. § 924(c)(1), in light of the recent Supreme Court decision in *Deal v. United States*, 508 U.S. 129, 113 S.Ct. 1993, 124 L.Ed.2d 44 (1993). The statute prescribes additional penalties for certain crimes if they are committed with deadly weapons. There is a substantial difference between the prison

term mandated for the defendant by the government's interpretation of the statute and that mandated by the defendant's interpretation.

## BACKGROUND

The facts of this case may be summarized as follows:[1] On July 6, 1995, the defendant in this sentencing, Jose Casiano ("Casiano"), together with co-defendant, Alfredo DeJesus, ("DeJesus") and a juvenile, got a ride from Camden, New Jersey to Philadelphia, Pennsylvania to visit Casiano's cousin. The cousin was not at home, but his daughter was, and the defendants stayed in the house for several hours snorting heroin and phencyclidine. When the cousin did not return, the three left and began walking towards Camden.

One of the defendants suggested they steal a car, and shortly thereafter they saw Father Marc Shinn, a Russian Orthodox priest, getting out of his 1986 Dodge van. DeJesus, who had an automatic pistol, approached Father Shinn, hit him with the butt of the gun, and forced him into the back of the van. DeJesus told Father Shinn that because the priest had seen his face, DeJesus would have to kill him. With DeJesus driving, Casiano in the passenger seat, and the juvenile in the back of the van with Father Shinn, the defendants took the van to Camden. As they drove, the defendants discussed how and where they would kill the victim. The juvenile, who also had a firearm, sat on top of Father Shinn in the back of the van during the trip. He repeatedly pistol-whipped and threatened him, and committed other indignities. Father Shinn lost consciousness several times during the trip.

After driving for forty-five minutes to an hour, the defendants stopped the van near a remote trailer park in Camden. Casiano and the juvenile forced Father Shinn out of the van. The juvenile walked him down a dark dirt road, told him to get down, and fired twice at his back, hitting him once. The juvenile went back to the van, shouting, "I shot! I shot!" to his companions, and they all fled in the van, apparently leaving Father Shinn for dead. Bleeding heavily from a gunshot wound to his shoulder, Father Shinn managed to make his way to a trailer home where the residents helped him and let him call the police. Within an hour, the emergency medical technicians who had taken Father Shinn to the hospital saw his van with people inside it parked by a bar. They called the police, who arrived to find the three defendants and various firearms in the van. Casiano thereafter pleaded guilty to all five counts of the indictment: conspiracy to commit carjacking and kidnapping, in violation of 18 U.S.C. § 371; aiding and abetting carjacking, in violation of 18 U.S.C. § 2 and 18 U.S.C. § 2119; use of a firearm in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1); kidnapping, in violation of 18 U.S.C. § 1201(a)(1); and a second count of use of a firearm in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1).

## DISCUSSION

The statute in question provides in relevant part:

> Whoever, during and in relation to any crime of violence ... for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence ..., be sentenced to imprisonment for five years, .... In the case of his second or subsequent conviction under this subsection, such person shall be sentenced to imprisonment for twenty years; ...

18 U.S.C. § 924(c)(1). The key phrase is "second or subsequent conviction." The government proposes that the use of a gun during the carjacking counts as the first section 924(c)(1) violation, for which the defendant must receive an additional sentence of five years, and the use of a gun during the kidnapping counts as a "second or subsequent conviction," for which he must receive an additional twenty years. The defendant argues that the use of a gun during the kidnapping should not count as a "second

---

1. This account is taken primarily from facts in the defendant's pre-sentence report, prepared by the United States Probation Office. The defendant did not object to those facts and I adopted them at the sentencing. It is supplemented by the testimony of the victim, Father Marc Shinn, at a pre-trial hearing and at the sentencing.

conviction" because all of the charges resulted from a single criminal episode involving a single victim.

I adopt the government's position because I find it more consistent with the Supreme Court's construction of section 924(c)(1) in *Deal v. United States*. The defendant in *Deal* used a gun to commit six bank robberies on six different dates; however, he was convicted of all of them in a single proceeding. Thomas Deal was charged with six counts of bank robbery, in violation of 18 U.S.C. §§ 2113(a) and (d), and with six counts of carrying and using a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1). 508 U.S. at 129–31, 113 S.Ct. at 1995. The district court sentenced Deal to 5 years additional imprisonment on the first section 924(c)(1) count and to 20 years on each of the five other section 924(c)(1) counts, the terms to run consecutively. Both the court of appeals and the Supreme Court affirmed. *Id.*

In response to Deal's argument that a "second or subsequent conviction" for purposes of section 924(c)(1) had to occur in a separate adjudication, the Supreme Court held that the word "conviction" in the statute did not refer to the entry of a final judgment of conviction, but rather to the finding of guilt that necessarily preceded that entry.[2] 508 U.S. at 131–32, 113 S.Ct. at 1996. Therefore, the finding of guilt on each count after the first was "second or subsequent." The majority rejected as "nothing but personal intuition" the dissent's conclusion that the statute was directed at those who "failed to learn their lessons from the initial punishment." *Id.* at 136, 113 S.Ct. at 1998 (quoting *United States v. Neal*, 976 F.2d 601, 603 (9th Cir.1992) (Fletcher, J., dissenting)). The majority stated:

We choose to follow the language of the statute, which gives no indication that punishment of those who fail to learn the "lesson" of prior conviction or of prior punishment is the sole purpose of § 924(c)(1), to the exclusion of other penal goals such as taking repeat offenders off the streets for especially long periods, or simply visiting society's retribution upon repeat offenders more severely.... It seems to us eminently sensible to punish the second murder, for example, with life in prison rather than a term of years— whether or not conviction of the first murder (or completion of the sentence for the first murder) has yet occurred.

*Id.*

Since *Deal* was decided, I have found only one court of appeals decision that has applied *Deal* to a case in which multiple convictions arose out of a single criminal episode. In *United States v. Andrews*, 75 F.3d 552 (9th Cir.1996), defendant Ivan Andrews shot and killed a person at close range with a shotgun. *Id.* at 554. "Seconds later," his sister, Paula Andrews, fired into the car the victim had been driving, killing a second person and injuring two others. *Id.* The brother and sister were each found guilty of one count of second degree murder, one count of aiding and abetting in second degree murder, two counts of aiding and abetting in the attempted voluntary manslaughter of the two injured individuals, and four counts of using a firearm in relation to a crime of violence. The four counts of using a firearm were in violation of the statute at issue in this case, 18 U.S.C. § 924(c)(1).[3]

In treating three of each defendant's section 924(c)(1) convictions as "second or subsequent" convictions under the statute, the court of appeals rejected Paula Andrews' ar-

---

**2.** In a footnote, the Court elaborated on why, when there are multiple convictions in a single proceeding, some could be considered "second or subsequent:"

Petitioner also argues that the terms "second" and "subsequent" admit of at least two meanings—next in time and next in order of succession. That ambiguity is worth pursuing if "conviction" means "judgment," since a judgment entered once-in-time can (as here) include multiple counts. The point becomes irrelevant, however, when "conviction" means

(as we hold) a finding of guilt. Unlike a judgment on several counts, findings of guilt on several counts are necessarily arrived at successively in time.

508 U.S. at 133 n. 1, 113 S.Ct. at 1997 n. 1.

**3.** The court of appeals noted that all of the crimes occurred in "Indian Country," 18 U.S.C. § 1151, and that the Ivan and Paula Andrews were "Indians," thereby giving the district court jurisdiction. 18 U.S.C. § 1153.

gument that the imposition of an enhanced penalty designed for repeat offenders made no sense in a case like hers, "where there was no time for her to reflect and understand the consequences of enhanced penalties for the 'subsequent' offenses." [4]  *Id.* at 558.  The *Andrews* court reasoned:

> Although there is much force to Paula's policy argument, it does not permit us to avoid the import of the Supreme Court's unambiguous definition of "second or subsequent conviction" in Deal.  The fact that "second 924 sentences can produce anomalous results and will provide no additional deterrence … cannot defeat the plain language of the statute." [*U.S. v.*] *Fontanilla*, 849 F.2d [1257] at 1258. [ (9th Cir. 1988) ].  Indeed, we were presented with a situation comparable to Paula's in Lopez, where the defendants were convicted of using different guns on the same date in connection with the same drug trafficking activity. [*U.S. v. Lopez* ] 37 F.3d [565] at 568. [ (9th Cir.1994) ].  One section 924(c) charge was related to an offense of possession of drugs with intent to distribute, and the second section 924(c) charge was related to conspiracy to commit the same substantive offense.  We upheld twenty-year sentences for the second section 924(c) convictions.  Id. at 570–57.  We conclude that Deal and Lopez require us to reject Paula's challenge to the repeat-offender section 924(c) sentences.

75 F.3d at 558.

In an attempt to distinguish *Andrews*, the defendant argues that there must be either more than one criminal episode or more than one victim for a conviction to qualify as "second or subsequent" under *Deal*, but I am not persuaded.  Suppose the events had been the same except that Father Shinn had been a passenger in a parishioner's van and the parishioner had been knocked out with a gun and pushed out of the van before Father Shinn was taken to Camden and shot.  I do not see that in those circumstances the defendant's conviction for use of a firearm in relation to kidnapping would fit any more or less easily into the "second or subsequent" category than it does now.

The defendant points to *United States v. Torres*, 862 F.2d 1025 (3d Cir.1988), but that case does not require that I adopt his position in this case.  In *Torres*, the defendant was convicted of conspiracy to distribute cocaine, using a firearm during a drug trafficking crime, assaulting a federal officer, and using a firearm in the assault of a federal officer.  862 F.2d at 1026.  The court of appeals upheld the separate section 924(c)(1) convictions for use of a firearm in the drug trafficking crime and use of a firearm during the assault of a federal official.  *Id.* at 1028, 1030.  At trial, the district court had imposed two consecutive five-year sentences for the two section 924(c)(1) violations.  *Id.* at 1026.  On appeal, Torres argued that those two sentences were duplicative and that only one such term of imprisonment was permissible.  *Id.* at 1027.  The court of appeals did not reach that question, however, because the prosecution conceded on appeal that only one firearm incident had occurred and that, therefore, only one enhanced punishment should be imposed.[5]  *Id.*

The *Torres* court did not hold that separates sentences could not be imposed in a single proceeding for separate violations of section 924(c)(1) arising out of a single criminal episode.  The government's concession

---

4.  In response to the defendants' contention that their section 924(c)(1) convictions violated the double jeopardy clause, the *Andrews* court concluded they did not because each conviction required proof of an additional fact not required by the others.  75 F.3d at 558; *see Blockburger v. United States*, 284 U.S. 299, 303–05, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932).  In this case also, each section 924(c)(1) conviction required proof of an additional fact not required by the other.

5.  The fact pattern that the prosecution decided comprised only one firearm incident was as follows: Two undercover policemen were in the process of arresting two suspects for selling packets of what they suspected was a controlled substance to passing motorists at an intersection.  One officer was with the two suspects and the other was in the car calling in the report.  The defendant was apparently monitoring the drug transactions and did not realize who the policemen were.  He brought his car to a screeching stop at the intersection and pointed a carbine at the officer in the car.  The other officer drew his revolver and shouted, "Police; drop it or I'll shoot."  The defendant lowered the carbine and surrendered.  *Torres*, 862 F.2d at 1027.

precluded such a ruling. The court of appeals noted that in a prior case, "we held that, although the law allows separate and discrete offenses to be charged, it does not permit separate and discrete sentences to be imposed when Congress did not intend double punishment." *Id.* at 1032 (citing *U.S. v. Gomez,* 593 F.2d 210, 214 (3d Cir.) (in banc), *cert. denied,* 441 U.S. 948, 99 S.Ct. 2172, 60 L.Ed.2d 1052 (1979)). At the time *Torres* was decided, the Supreme Court had not yet interpreted section 924(c)(1) to mean that Congress did, in effect, intend separate and discrete sentences to be imposed for separate convictions under section 924(c)(1) in a single proceeding. Now, in *Deal,* it has, and I am bound to follow that interpretation.

I conclude that, under *Deal* and in accord with *Andrews,* an additional twenty year sentence for conviction of the second count of use of a firearm in relation to a crime of violence is mandated by 18 U.S.C. § 924(c)(1) in this case.

Another issue may be raised on appeal, and I wish to clarify my position on it. That is the reason for the amount of my departure from the United States Sentencing Guidelines. The government moved for a downward departure under section 5K1.1 of the Guidelines based on the defendant's substantial assistance to authorities. The government attorney stated that the defendant had agreed to cooperate shortly after his arrest, met with federal officials on numerous occasions, substantially assisted the government in its preparation of the case, and agreed to testify against his co-defendants, if necessary. She further stated that if DeJesus had not decided to plead guilty, Casiano's testimony against him would have been essential.

I granted the government's motion for a downward departure because of the defen-dant's substantial assistance and I departed downward three offense levels.[6] If I had based my decision as to how far to depart solely on the factors enumerated under section 5K1.1, I would have departed further; however, because of other factors, primarily the extreme seriousness of the crime and the impact on the victim, I felt constrained to limit the departure as I did. It may be that the additional factors I took into account are appropriately considered under Guidelines section 5K1.1(a), which states, "The appropriate reduction shall be determined by the court for reasons stated that may include, but are not limited to, consideration of the following[.]" U.S.S.G. § 5K1.1 (1995). It then lists five factors.[7] If the additional factors I took into account may not be considered under this direction, then I have looked outside section 5K1.1 in determining how far to depart downward. The additional factors I considered are consistent with the general considerations of sentencing, i.e., punishment, rehabilitation, deterrence, and the protection of society.

## CONCLUSION

For reasons stated above, I have interpreted 18 U.S.C. § 924(c)(1) to mandate two consecutive sentences in this case, one of five years and one of twenty years, for the two convictions under that statute. I granted the government's 5K1.1 motion for a downward departure from the Guidelines range based on the defendant's cooperation with the authorities, but I limited the degree of the departure because of factors not explicitly mentioned in section 5K1.1.

---

6. With the three level departure for cooperation, the defendant's offense level is 31. His criminal history category is VI as a career offender, and the Guidelines range is 188 to 235 months. I sentenced the defendant to the bottom of that range—188 months. I then added five years for the first violation of section 924(c)(1) and twenty years for the second violation for a total of 488 months, or 40 years and 8 months.

7. The factors listed in section 5K1.1 are:
   (1) the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;
   (2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;
   (3) the nature and extent of the defendant's assistance;
   (4) any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance;
   (5) the timeliness of the defendant's assistance.
   U.S.S.G. § 5K1.1