

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-7-1997

# United States v. Casiano

Precedential or Non-Precedential:

Docket 96-1256,96-1380

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation

"United States v. Casiano" (1997). *1997 Decisions*. Paper 97.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/97

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed May 7, 1997

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 96-1256

UNITED STATES OF AMERICA

v.

JOSE CASIANO, a/k/a JOSE RIVERA

Jose Casiano,

    Appellant

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Crim. No. 95-cr-00408-1)

NO. 96-1380

UNITED STATES OF AMERICA

v.

ALFREDO DeJESUS,

    Appellant

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Crim. No. 95-cr-00408-2)


Argued November 4, 1996

Before: SLOVITER, Chief Judge, McKEE, and
ROSENN, Circuit Judges

(Filed May 7, 1997)

    Barnaby C. Wittels (Argued)
    Stephen Robert LaCheen and
     Associates
    Philadelphia, PA 19102

    Attorney for Appellant,
    Jose Casiano

    James A. Lammendola (Argued)
    Lammendola and Lammendola

Philadelphia, PA 19147

Attorney for Appellant,
Alfredo DeJesus

Michael R. Stiles
 United States Attorney
Walter S. Batty, Jr.
 Assistant United States Attorney
 Chief of Appeals
Wendy A. Kelly (Argued)
 Assistant United States Attorney
Philadelphia, PA 19106

OPINION OF THE COURT

SLOVITER, Chief Judge.

In this consolidated action, appellants Jose Casiano and Alfredo DeJesus, each of whom pled guilty to both carjacking and kidnapping, appeal from the application of the twenty-year enhancement mandated by 18 U.S.C. § 924(c)(1) for a second or subsequent conviction for using a firearm in relation to a crime of violence. They contend

2

that despite the literal language of the statute, the enhancement is not applicable if the second conviction arises from the same criminal episode and involves the same victim as the first conviction. Casiano appeals his firearms conviction, arguing that he is not liable under the standard enunciated in Bailey v. United States, 116 S.Ct. 501 (1995), for the "use and carrying" of a firearm under 18 U.S.C. § 924(c)(1). Casiano and DeJesus also contest the district court's rulings on their respective motions for downward departures. We have jurisdiction of these appeals, which we had consolidated under 28 U.S.C. § 1291.

I.

FACTS AND PROCEDURAL HISTORY

On July 6, 1995, after a binge of snorting heroin and angel dust lasting approximately six hours, Jose Casiano, Alfredo DeJesus, and Jose Cantero, a fifteen-year old juvenile, left the house of Casiano's cousin in Philadelphia and began walking back to their homes in Camden. Both Cantero and DeJesus were carrying .380 automatic pistols. One of the three suggested that they steal a car. At approximately 10:00 p.m., they saw Father Marc Shinn, a Russian Orthodox priest, getting out of his Dodge van. DeJesus approached Father Shinn, hit him in the head

with the butt of the gun and forced him into the back of the van. Father Shinn was then forced at gunpoint to lie in the back of the van, where Cantero sat on his back, covered his head with a blanket, and held a gun to his head. With DeJesus driving, they drove the van back to Camden.

Father Shinn told the men he was a priest; one of them answered, "We don't fucking care if you are a fucking priest." During the forty-five minutes in which Father Shinn was held captive in the back of the van, Cantero straddled him, simulating anal sex, and repeatedly pistol-whipped and threatened him. Father Shinn lost consciousness several times. His captors stated that because Father Shinn had seen DeJesus's face, he would have to be killed, and they openly discussed how and where they would kill him.

They stopped the van when they reached a remote location in Camden. Casiano and Cantero forced Father Shinn out of the van without his shoes or glasses, and Cantero then forced him to walk at gunpoint through a ditch of water approximately one foot deep and through a grassy field, pushed him to the ground and fired twice at his back. One shot narrowly missed Father Shinn's head, and the other shot hit him in the back. Father Shinn feigned death. Cantero returned to the van, shouting"I shot, I shot," and the three assailants drove away, leaving Father Shinn lying on the ground.

The bullet actually went through Father Shinn's shoulder, he was not critically injured, and he managed to get help. A short time later, one of the paramedics who assisted Father Shinn and his partner recognized the van from the description given by Father Shinn. He called the police, and the three perpetrators were apprehended while sitting in the van outside a bar. The police also found four firearms in the van -- the two .380 pistols, one sawed-off shotgun, and one .38 revolver, all loaded with live ammunition.

DeJesus and Casiano were indicted on August 3, 1995 by a federal grand jury sitting in the Eastern District of Pennsylvania. Cantero was indicted separately. This court upheld the district court's order granting the government's motion to try him as an adult. See United States v. J.C., No. 95-1809 (3d Cir. May 24, 1996).

Both DeJesus and Casiano were charged with one count of conspiracy to commit carjacking and kidnapping in violation of 18 U.S.C. § 371, one count of carjacking in violation of 18 U.S.C. § 2119, one count of kidnapping in violation of 18 U.S.C. § 1201(c)(1), and two counts of using a firearm in relation to a crime of violence in violation of 18

U.S.C. § 924(c)(1). Casiano entered a guilty plea, pursuant to a plea agreement, to all counts on October 23, 1995. DeJesus entered an open guilty plea to all counts on December 22, 1995.

The district court sentenced Casiano to 188 months imprisonment on the conspiracy, carjacking and kidnapping counts to run concurrently. In addition, the

4

court sentenced him to an additional 60 months for the use of a firearm in relation to the carjacking pursuant to 18 U.S.C. § 924(c)(1), to run consecutively to the substantive counts. The court then imposed an additional sentence of 240 months imprisonment for the use of a firearm in relation to the kidnapping and, pursuant to the same statute, imposed that sentence to run consecutively. The total imprisonment for Casiano thus was 488 months.

DeJesus was sentenced to 70 months imprisonment on the conspiracy, carjacking and kidnapping counts to run concurrently to each other, and an additional 60 months for the first violation of 18 U.S.C. § 924(c)(1), to run consecutively, and 240 months for the second violation of 18 U.S.C. § 924(c)(1), to run consecutively.

The principal challenge raised by both Casiano and DeJesus on appeal is to the application of § 924(c)(1) to the second offense, which added an additional twenty years imprisonment to their sentences.

II.

CHALLENGES TO SENTENCES UNDER § 924(c)(1)

A.

The relevant statute, 18 U.S.C. § 924(c)(1), provides, in pertinent part:

>  Whoever, during and in relation to any crime of violence . . . uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence . . . be sentenced to imprisonment for five years . . . . In the case of his second or subsequent conviction under this subsection, such person shall be sentenced to imprisonment for twenty years . . . . Notwithstanding any other provision of law, the court shall not place on probation or suspend the sentence of any person convicted of a violation of this subsection, nor shall the term of imprisonment imposed under this subsection run concurrently with any other term of imprisonment

including that imposed for the crime of violence . .. in which the firearm was used or carried.

18 U.S.C. § 924(c)(1) (Supp. 1996) (emphasis added).

Appellants Casiano and DeJesus argue that because the criminal course of conduct from the carjacking (the first predicate offense) to the kidnapping (the second predicate offense) was continuous and involved only one victim, the district court erred as a matter of law in applying § 924(c)(1) to use of a handgun in connection with the kidnapping as "a second or subsequent conviction." However, they point to nothing in the language of the statute to support their statutory construction and our searching inquiry has uncovered no support for their position. The statute speaks in terms of "conviction," not criminal episode. This textual approach to § 924(c)(1) is compelled by the Supreme Court's interpretation of that statutory provision in Deal v. United States, 508 U.S. 129, 113 S.Ct. 1993 (1993).

Deal, who had committed six armed robberies at different banks on different dates within a four-month period, was charged in one indictment with, inter alia, six bank robberies and six counts of violation of 18 U.S.C. § 924(c)(1). Upon Deal's conviction on all charges, he was sentenced to five years imprisonment on the first § 924(c)(1) count and to twenty years on each of the five other § 924(c)(1) counts, each term to run consecutively. The issue before the Supreme Court was "whether [Deal's] second through sixth convictions under § 924(c)(1) in [a] single proceeding arose `[i]n the case of his second or subsequent conviction' within the meaning of § 924(c)(1)." Id. at 131.

The Court rejected Deal's argument that because "conviction" could mean either the finding of guilt or the entry of a final judgment of guilt, § 924(c)(1) should be limited to the latter under the rule of lenity. Under Deal's construction, the "second or subsequent conviction" as used in § 924(c)(1) would have had to occur in a separate adjudication. Justice Scalia parsed the text of the statute and concluded that the only coherent reading of the language was that the word "conviction" used there referred to a finding of guilt, and not to a final judgment, id. at 132,

and that because "findings of guilt on several counts are necessarily arrived at successively in time," id. at 133 n.1, a finding of guilt on each count after the first was "second or subsequent," id..

The dissent in Deal argued that "subsequent conviction" as used in § 924(c)(1) "clearly is intended to refer to a conviction for an offense committed after an earlier conviction has become final; it is, in short, a recidivist provision." Id. at 141-42 (Stevens, J., dissenting). Inasmuch as that argument was expressly rejected by the Deal majority, Casiano and DeJesus do not repeat it here. Instead, they contend that § 924(c)(1) was never intended to punish subsequent convictions arising out of a single criminal enterprise involving the same victim. They attempt to distinguish Deal because it involved six separate and distinct robberies, which were committed over a period of four months at six different Houston area banks and necessarily involved numerous victims. They note that Deal and the opinions of the courts of appeals subsequent to Deal are silent as to whether multiple § 924(c)(1) offenses under these facts can constitute "second or subsequent" convictions. They argue that therefore we should conclude that the twenty-year enhancement under § 924(c)(1) does not reach them.

This court has not yet been faced with this precise factual scenario. Nonetheless, the language and reasoning of Deal ineluctably require rejection of this argument. In order to adopt defendants' argument, we would have to limit the statutory language "second or subsequent conviction" to exclude a conviction that arises out of the same criminal episode involving the same victim. Defendants would have us insert words in the statute which simply are not there. In doing so, they would require us to ignore that Congress specifically commanded that the enhancement would apply to "any" crime of violence without regard to temporal considerations.

Just as the Supreme Court in Deal declined to differentiate between convictions embodied in separate judgments and those embodied in separate charges in the same indictment, so also we cannot distinguish between criminal acts that occur over a period of time and/or affect

7

various victims and those that result from the same course of criminal activity and involve one victim. The Deal Court was unequivocal in holding that under § 924(c)(1) "conviction" means "the finding of guilt by a judge or jury that necessarily precedes the entry of a final judgment of conviction," and that more than one "conviction" can occur in a single proceeding. Id. at 131-32. The Court stated: "The present statute . . . does not use the term `offense,' so it cannot possibly be said that it requires a criminal act after the first conviction. What it requires is a conviction after the first conviction. There is utterly no ambiguity in that . . . ." Id. at 135 (emphasis added).

Those circuits that have had occasion to interpret § 924(c)(1) after Deal have uniformly required the imposition of twenty-year consecutive sentences for second and subsequent convictions on multiple counts of § 924(c)(1) notwithstanding a factual nexus between the predicate offenses. In United States v. Floyd, 81 F.3d 1517 (10th Cir.), cert. denied, 117 S.Ct. 144 (1996), a case closely parallel to this one, defendant Floyd was sentenced to two § 924(c)(1) convictions corresponding to the carjacking of the truck of a school principal and the kidnapping of his (Floyd's) stepson from that school. Floyd challenged the consecutive § 924(c)(1) sentences as duplicative on the ground that the carjacking and kidnapping were "a single, continuous event." Id. at 1526-27. The court held that the consecutive sentences were not duplicative because each conviction required proof of an additional fact not required by the other under the test articulated by the Supreme Court in Blockburger v. United States, 284 U.S. 299, 304 (1932). See id.

Similarly, in United States v. Andrews, 75 F.3d 552, 558 (9th Cir.), cert. denied, 116 S.Ct. 1890 (1996), the court rejected a challenge to a § 924(c)(1) enhancement for a second conviction in a case where the underlying offenses of murder and manslaughter occurred "virtually simultaneously," as part of the same criminal episode. And in United States v. Camps, 32 F.3d 102 (4th Cir. 1994), cert. denied, 115 S.Ct. 1118 (1995), the court, faced with a defendant intricately involved in a violent drug conspiracy, upheld separate § 924(c)(1) convictions with consecutive

8

terms of five, twenty, and twenty years arising out of a series of acts committed on separate days, all of which were part of the same scheme to preserve this drug operation from a rival gang.

Casiano and DeJesus do not dispute that under the Blockburger test carjacking and kidnapping are distinct predicate offenses but they attempt to distinguish Floyd and Andrews on the ground that those cases involved multiple victims. They point to no language in § 924(c)(1) or in Deal's interpretation of § 924(c)(1) that would support such a distinction, nor do they offer a principled reason for us to treat that difference as significant.

It is unquestionable that crimes occurring as part of the same underlying occurrence may constitute separate predicate offenses if properly charged as separate crimes. See United States v. Fontanilla, 842 F.2d 1257, 1258-59 (9th Cir. 1988). It follows that each may be a separate predicate for a § 924(c)(1) conviction, as the court held in

Andrews, 75 F.3d at 558.

Indeed, in United States v. Torres, 862 F.2d 1025 (3d Cir. 1988), this court sustained convictions on two § 924(c)(1) counts that arose out of the same episode on the same day. Torres sought to protect his confederates who were being arrested for distribution of cocaine on the street by brandishing a firearm at the arresting officer. He was convicted of the predicate offenses of conspiracy to distribute cocaine and assaulting a federal officer, as well as two § 924(c)(1) offenses, i.e., use of afirearm during a drug trafficking crime (count 4) and use of afirearm in connection with an assault on a federal officer (count 5). We held that "the section 924(c)(1) convictions were proper under both counts 4 and 5." Id. at 1032. This alone stands as circuit precedent compelling rejection of the argument of Casiano and DeJesus, as not only did the two § 924(c)(1) convictions in Torres arise out of the same criminal episode, they arose out of the same act, unlike the facts in this case.

It is true, as defendants note, that in Torres the government stipulated that only one sentence could be imposed in that case where there were two violations of § 924(c)(1). See id. However, the Torres decision came down

before Deal and we accepted the government's concession without comment. It is therefore not controlling here, and to the extent it may be interpreted as contrary to Deal, it is superseded by Deal. See United States v. Luskin, 926 F.2d 372, 378 (4th Cir. 1991).

Although there may be some force in defendants' argument that the enhanced penalty under § 924(c)(1) serves little purpose in a case where the predicate acts occur simultaneously and where there is not time for defendants to reflect and understand the consequences of a "second" conviction, we agree with the Ninth and Tenth Circuits that the Supreme Court's unambiguous definition of "second or subsequent conviction" in Deal compels our holding. That Court specifically rejected a similar argument, stating:

> We choose to follow the language of the statute, which gives no indication that punishment of those who fail to learn the "lesson" of prior conviction or of prior punishment is the sole purpose of § 924(c)(1), to the exclusion of other penal goals such as taking repeat offenders off the streets for especially long periods, or simply visiting society's retribution upon repeat offenders more severely.

Deal, 508 U.S. at 136. The fact that "section 924 sentences

can produce anomalous results and will provide no additional deterrence . . . cannot defeat the plain language of the statute." Andrews, 75 F.3d at 558.

Being bound by the Supreme Court's interpretation of § 924(c)(1) in Deal, we will affirm the district court's § 924(c)(1) enhancements. It is for Congress to ameliorate the result of application of the statute according to its terms, if it deems it too harsh.